# United States Court of Appeals for the Federal Circuit

_____

**RAYMOND E. STAUFFER,**
*Plaintiff-Appellant,*

v.

**BROOKS BROTHERS, INC.**
AND **RETAIL BRAND ALLIANCE, INC.,**
*Defendants-Appellees,*

v.

**UNITED STATES,**
*Movant-Cross Appellant,*

_____

2009-1428, -1430, -1453

_____

Appeals from the United States District Court for the Southern District of New York in Case No. 08-CV-10369, Judge Sidney H. Stein.

_____

Decided: August 31, 2010

_____

RAYMOND E. STAUFFER, of Chatham, New Jersey, pro se.

STEPHEN L. BAKER, Baker & Rannells, PA, of Raritan, New Jersey, argued for defendants-appellees. With him

on the brief were NEIL B. FRIEDMAN and RYAN A. MCGONIGLE.

DOUGLAS N. LETTER, Appellate Litigation Counsel, Civil Division, United States Department of Justice, of Washington, DC, argued for movants-cross appellants. With him on the brief was TONY WEST, Assistant Attorney General.

THOMAS P. STEINDLER, McDermott Will & Emery LLP, of Washington, DC, for amicus curiae CIBA Vision Corporation. With him on the brief were M. MILLER BAKER and JEFFREY W. MIKONI.

BRYAN P. COLLINS, Pillsbury Winthrop Shaw Pittman LLP, of McLean, Virginia, for amicus curiae Stanley Black & Decker, Inc., et al. With him on the brief was JACK S. BARUFKA.

————————————

Before RADER, *Chief Judge*, and LOURIE and MOORE, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Raymond E. Stauffer and the government appeal from the decision of the United States District Court for the Southern District of New York dismissing Stauffer's false marking *qui tam* action for lack of standing. *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248 (S.D.N.Y. 2009) ("*Standing Op.*"). The government also appeals from the court's denial of its motion to intervene. *Stauffer v. Brooks Bros., Inc.*, No. 08-cv-10369, 2009 U.S. Dist. Lexis 51166 (S.D.N.Y. June 15, 2009) ("*Intervention Op.*"). Because Stauffer had standing to bring his claim, and because the government had a right to intervene, we reverse on both grounds.

BACKGROUND

Brooks Brothers, Inc. and its parent Retail Brand Alliance, Inc.[1] (collectively, "Brooks Brothers") manufacture and sell men's bow ties. Some of the Brooks Brothers bow ties contain an "Adjustolox" mechanism that is manufactured by a third party, J.M.C. Bow Company, Inc. ("J.M.C. Bow"), and are marked with, *inter alia*, U.S. Patent Nos. 2,083,106 and 2,123,620, which expired in 1954 and 1955, respectively. *Standing Op.*, 615 F. Supp. 2d at 251, 255.

Stauffer is a patent attorney who has purchased some of the marked bow ties. *Id.* at 251. In December 2008, Stauffer brought a *qui tam* action under 35 U.S.C. § 292 alleging that Brooks Brothers had falsely marked its bow ties. Section 292, the "false marking" statute, provides that:

(a) . . .

Whoever marks upon, or affixes to . . . any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public

. . .

Shall be fined not more than $500 for every such offense.

(b) *Any person may sue for the penalty*, in which event one-half shall go to the person suing and the other to the use of the United States.

*Id.* (emphasis added).

---

[1]    According to the parties, Brooks Brothers, Inc. has merged into Retail Brand Alliance, Inc. and no longer exists as a separate legal entity.

Brooks Brothers moved to dismiss Stauffer's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing and pursuant to Rule 12(b)(6) for failure to allege an intent to deceive the public with sufficient specificity to meet the heightened pleading requirements for claims of fraud. The district court granted Brooks Brothers' motion pursuant to Rule 12(b)(1), concluding that Stauffer lacked standing. According to the court, all plaintiffs, including *qui tam* plaintiffs (or "relators"), must establish (1) that they have suffered an injury in fact (2) that is causally connected to the defendant, and (3) that is likely to be redressed by the court. *Standing Op.*, 615 F. Supp. 2d at 253. The court further noted that the *qui tam* provision of section 292(b) operates as a statutory "assignment" of the rights of the United States, so Stauffer must prove that the government, rather than he, satisfies the requirements for standing, including that it has suffered an injury in fact. *Id.*

The district court held that Stauffer had not sufficiently alleged that the United States had suffered an injury in fact from Brooks Brothers' false marking. According to the court, Stauffer's allegations of Brooks Brothers' conduct wrongfully quelling competition were too conjectural or hypothetical to constitute an injury in fact. *Id.* at 254–55. The court added that even the hypothetical harm to competitors was lessened by the fact that J.M.C. Bow provides the marked Adjustolox mechanism to many of Brooks Brothers' competitors, in addition to providing it to Brooks Brothers. *Id.* at 255.

The district court further held that Stauffer's assertions that he himself was injured were not contained in the complaint and were thus not properly alleged. *Id.* at 255 n.7. Moreover, according to the court, those assertions would only support an injury to Stauffer, not to the

public, and thus would not be a basis for finding standing. *Id.* Because the court found a lack of standing, it did not reach the merits of Brooks Brothers' Rule 12(b)(6) motion to dismiss for failure to allege an intent to deceive the public with sufficient specificity. *Id.* at 251 n.1.

After the district court's decision on standing, *Standing Op.*, 615 F. Supp. 2d 248, the government moved to intervene, arguing that the court's opinion called into question the constitutionality of section 292 and that the government was therefore entitled to defend the statute pursuant to Rule 24(a)(1) and 28 U.S.C. § 2403. The government also argued that its interest in seeing the patent laws enforced gave it a right to intervene pursuant to Rule 24(a)(2) and that it should be permitted to intervene pursuant to Rule 24(b)(1)(B). The court denied the motion, finding no basis for the government to intervene as of right and finding the showing for permissive intervention insufficient. *Intervention Op.*, 2009 U.S. Dist. Lexis 51166.

The district court reasoned that it had not decided any constitutional issue that would give the government the right to intervene pursuant to Rule 24(a)(1), as it had only decided the case on its facts. *Id.* at *8–9. The court added that, contrary to the government's argument, it was entitled to rule on Brooks Brothers' motion before the government's deadline to decide whether it would seek to intervene had expired, as the court had not held the statute unconstitutional. *Id.* at *9–10 n.4. The court further found that the government did not have a sufficient interest in the action to have a right to intervene pursuant to Rule 24(a)(2) because the court had denied standing only to Stauffer, not to the United States itself. *Id.* at *12.

Finally, the district court denied permissive intervention pursuant to Rule 24(b)(1)(B), finding that the government's interest in the outcome of the case was premised on issues and legal questions not actually presented to or decided by the court. *Id.* at *13–14. The court further reasoned that Brooks Brothers would be prejudiced by a post-judgment intervention that would impose needless costs and delay. *Id.* at *14–15.

Stauffer timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### A. Stauffer's Standing

The government argues that the district court erred in dismissing Stauffer's suit for lack of standing based on a lack of injury in fact.[2] The government asserts that *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), controls the outcome in this case, and that decision held that a *qui tam* relator has standing without an injury to the relator himself, a proposition that, according to the government, the court stated but did not follow. Furthermore, the government argues that the United States' interest in seeing its laws enforced itself leads to an injury in fact when those laws are not obeyed. In other words, according to the government, in enacting the false marking statute, Congress determined that such conduct is harmful and should be prohibited, which is a sufficient injury in fact to confer standing on the government and therefore on Stauffer as

---

[2] Appeal numbers 2009-1430 and -1453 are the government's appeals, and we granted the government's motion to intervene in appeal number 2009-1428. *Stauffer v. Brooks Bros, Inc.*, No. 2009-1428, Dkt. No. 62 (Fed. Cir. July 16, 2010) (granting government's motion to intervene).

the government's implicit assignee of the action to recover for injury. Finally, the government asserts that even if a proprietary injury involving the federal treasury's being directly diminished were required under *Vermont Agency*, as opposed to solely a sovereign injury based on the United States' interest in seeing its laws enforced, the United States has a proprietary interest in receiving half of the recovery in a suit under section 292.

Stauffer separately argues that, according to this court's decision in *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347 (Fed. Cir. 2005), the public is injured by false marking, which misleads and wrongly imposes the costs of evaluating patents on the public. Thus, he argues, the public has suffered an injury in fact sufficient to confer standing. Stauffer adds that his complaint alleged that Brooks Brothers had "wrongfully quelled competition with respect to . . . bow tie products thereby causing harm to the economy of the United States." J.A. 66, para. 129. That, he argues, further demonstrates an injury to the public. Stauffer also asserts that he has individually been injured as a member of the public, thereby demonstrating another injury to the public.

Brooks Brothers responds that standing is not automatically conferred on *qui tam* relators, but that they must demonstrate standing. Brooks Brothers adds that Stauffer's conclusory allegations that he was personally injured are insufficient to establish an injury, and the court properly looked outside the pleadings to assure itself that it lacked subject matter jurisdiction. Finally, as an alternative ground for affirmance, Brooks Brothers asserts that Stauffer has not met the other factors required for standing; the marking is not fairly traceable to Brooks Brothers but to J.M.C. Bow, and any injury to the United States is unlikely to be redressed by a favorable decision.

We agree with the government and Stauffer that Stauffer had standing to sue Brooks Brothers. "The question of standing to sue is a jurisdictional one, which we review *de novo*." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (*en banc*) (citation omitted). Every plaintiff must demonstrate standing, a jurisdictional prerequisite under Article III's case-or-controversy requirement. *Vermont Agency*, 529 U.S. at 771. Thus, a plaintiff must show (1) that he has suffered an "injury in fact," an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) that there is "a causal connection between the injury and the conduct complained of," and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and quotations marks omitted); *see Vermont Agency*, 529 U.S. at 771. We conclude that Stauffer has met that test and hence has standing in this case.

As the district court noted, section 292(b) is a *qui tam* provision, "*i.e.*, a statute that authorizes someone to pursue an action on behalf of the government as well as himself." *Standing Op.*, 615 F. Supp. 2d at 253. The Supreme Court, this court, and the Second Circuit have repeatedly treated it as such. *See Vermont Agency*, 529 U.S. at 768 n.1 (listing section 292(b) as one of four *qui tam* statutes currently in force); *Pequignot v. Solo Cup Co.*, 608 F.3d 1356 (Fed. Cir. 2010) (referring to section 292 as a *qui tam* provision); *Boyd v. Schildkraut Giftware Corp.*, 936 F.2d 76, 79 (2d Cir. 1991) (Section 292 "is enforceable by a *qui tam* remedy, enabling any person to sue for the statutory penalty and retain one-half of the recovery.").

Under *Vermont Agency*, a *qui tam* plaintiff, or relator, can establish standing based on the United States' im-

plicit partial assignment of its damages claim, 529 U.S. at 773, to "any person," *see* 35 U.S.C. § 292(b). In other words, even though a relator may suffer no injury himself, a *qui tam* provision operates as a statutory assignment of the United States' rights, and "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vermont Agency*, 529 U.S. at 773. Thus, in order to have standing, Stauffer must allege that the United States has suffered an injury in fact causally connected to Brooks Brothers' conduct that is likely to be redressed by the court.

As the government points out, Congress has, by enacting section 292, defined an injury in fact to the United States. In other words, a violation of that statute inherently constitutes an injury to the United States. In passing the statute prohibiting deceptive patent mismarking, Congress determined that such conduct is harmful and should be prohibited. The parties have not cited any case in which the government has been denied standing to enforce its own law. Because the government would have standing to enforce its own law, Stauffer, as the government's assignee, also has standing to enforce section 292.

Brooks Brothers relies heavily on *Lujan*, which denied plaintiffs standing under a citizen-suit provision. 504 U.S. 555. However, in that case, the citizen-suit provision allowed private individuals to sue the government. Thus, the Supreme Court reasoned that such a law would enable courts "to become virtually continuing monitors of the wisdom and soundness of Executive action." *Id.* at 577. Hence, it was "clear that in suits against the Government, at least, the concrete injury [to the plaintiff] requirement must remain." *Id.* at 578. Here, in contrast, the *qui tam* provision operates not to allow individuals to sue the government, but to allow individuals to stand in the government's stead, as assignees of the government's

own claims. *See id.* at 572–73 (emphasizing that Lujan's was not "the unusual case in which Congress has created a concrete private interest in the outcome of a suit against a private party for the Government's benefit, by providing a cash bounty for the victorious plaintiff"). Thus, *Lujan* does not preclude Congress from assigning the government's claims to "any person," even if that person has no concrete injury himself.

Contrary to the district court's decision and Brooks Brothers' argument, Stauffer's standing as the United States' assignee does not depend upon the alleged injury to the United States being proprietary, as opposed to sovereign. We therefore express no view as to whether section 292 addresses a proprietary or a sovereign injury of the United States, or both (as does the False Claims Act, 31 U.S.C. §§ 3729–3733, according to *Vermont Agency*, 529 U.S. at 771). The court incorrectly read *Vermont Agency* as applying only to the United States' proprietary injury. In fact, the Supreme Court stated, "It is beyond doubt that the complainant asserts an injury to the United States—both the injury to its sovereignty arising from violation of its laws (which suffices to support a criminal lawsuit by the Government) and the proprietary injury resulting from the alleged fraud." *Vermont Agency*, 529 U.S. at 771. The Supreme Court considered both types of injuries and found them collectively to be sufficient to confer standing on the government and therefore on the relator. *See id.* at 774 (concluding, without stating which specific injury, "that the United States' injury in fact suffices to confer standing on respondent Stevens"). The Court made no distinction between the two, and we similarly do not do so here.

To support the contrary proposition that sovereign injury is not assignable, the district court cited *Fed. Election Comm. v. Akins*, 524 U.S. 11, 24 (1998), which stated that

an "abstract" harm, "for example, injury to the interest in seeing that the law is obeyed—deprives the case of the concrete specificity" necessary for standing. However, that statement referred to a private individual's abstract interest in seeing that the law is obeyed, not the government's interest in seeing that its own law is obeyed. From the government's perspective, a harm arises from an "injury to its sovereignty arising from violation of its laws." *Vermont Agency*, 529 U.S. at 771.

Indeed, the Court in *Vermont Agency* recognized and found conclusive the historical precedent of informer statutes enacted by the First Congress, which assigned certain sovereign interests of the United States to private parties. *Id.* at 776–77. For example, the Court relied upon statutes allowing an informer to sue for, and receive half the fine for, failure to file a census return, carriage of seamen without contract or illegal harboring of runaway seamen, and unlicensed trading with Indian tribes. *Id.* at 777 n.6. Those fines were not based on harms to the United States' proprietary interest, as the federal treasury was not directly diminished because of the violations. The fines were instead based only on harms to the sovereign interest of the United States, *viz.*, the interest in seeing the harms, as defined in the statutes, redressed. One statute noted by the Court even allowed informers to conduct a criminal prosecution and receive half the fine, *id.*, which would redress an injury that the Court explicitly found to be sovereign, *id.* at 771 (stating that a sovereign, as opposed to proprietary, injury "suffices to support a criminal lawsuit"). Thus, under *Vermont Agency*, the United States' sovereign injury is sufficient to confer standing upon it and therefore upon Stauffer, its implicit

partial assignee.[3] We therefore take no view as to whether section 292 addresses a proprietary or a sovereign injury of the United States, or both, as either one would confer standing on the government, and therefore Stauffer.

Amicus Ciba asserts that the government cannot constitutionally assign any claim without retaining control over the relator's actions, arguing that such assignment violates the "take Care" clause of Article II, § 3 of the Constitution. According to Ciba, in enacting section 292(b), Congress has stripped the executive branch of its duty to "take Care that the Laws be faithfully executed" by giving such power to the public. In support of that position, Ciba contrasts section 292 with the False Claims Act, which provides the government with, *inter alia*, the right to be notified of a case before the defendant is served, the right to intervene, and the right to seek dismissal or settlement over the objection of the relator or to prevent dismissal of the action by the relator. While Ciba raises relevant points, the district court did not decide, and the parties did not appeal, the constitutionality of section 292. Thus, we will not decide its constitutionality without the issue having been raised or argued by the parties. *See Vermont Agency*, 529 U.S. at 778 n.8 (ex-

---

[3] Amicus curiae Ciba Vision Corporation ("Ciba") argues that the United States cannot assign its sovereign interest to "any person," asserting that sovereign interests are analogous to personal interests and are not assignable at common law. Even if the interest of the United States here were purely sovereign, however, it is clear that the United States has partially assigned it, as the United States did in the statutes relied upon by the Supreme Court in *Vermont Agency*. *See id.* Given the Court's heavy reliance upon that historical underpinning, we consider the question decided, that the United States may assign even a purely sovereign interest.

pressing no view on whether *qui tam* suits violate the "take Care" clause of Article II, as the parties did not raise it, "nor is the validity of *qui tam* suits . . . a jurisdictional issue that we must resolve here").

We also need not address whether Stauffer's alleged injuries to himself or his asserted injuries to competition give him standing, either individually or as a member of the public. Stauffer's standing arises from his status as "any person," and he need not allege more for jurisdictional purposes. The district court conflated its jurisdiction with the merits of the case when it stated that Stauffer had failed to sufficiently allege a "purpose of deceiving the public." *Standing Op.*, 615 F. Supp. 2d at 254 n.5. Brooks Brothers similarly conflates jurisdiction and merits in asserting that Stauffer must show that the marking is fairly traceable to Brooks Brothers, rather than to J.M.C. Bow, the third party Adjustolox manufacturer. Neither of those points is jurisdictional in nature, nor do they fall under the standing inquiry. The standing doctrine is intended to require that the plaintiff is a proper person to bring the suit; it does not require that the plaintiff properly allege all of the elements of his claim. Thus, "standing does not depend on the merits of the plaintiff's contention that particular conduct is illegal"; it instead requires a claim to an injury of a legally cognizable right. 15 James Wm. Moore et al., *Moore's Federal Practice—Civil* ¶ 101.40[5][a]. By allowing any person to sue, Congress granted individuals a legally cognizable right to half of the penalty defined in section 292(a). Thus, Stauffer has sufficiently alleged (1) an injury in fact to the United States that (2) is caused by Brooks Brothers' alleged conduct, attaching the markings to its bow ties, and (3) is likely to be redressed, with a statutory fine, by a favorable decision. *See Lujan*, 504 U.S. at 560–61.

We therefore reverse the district court's decision concluding that Stauffer did not have standing. We remand for the court to address the merits of the case, including Brooks Brothers' motion to dismiss pursuant to Rule 12(b)(6) "on the grounds that the complaint fails to state a plausible claim to relief because it fails to allege an 'intent to deceive' the public—a critical element of a section 292 claim—with sufficient specificity to meet the heightened pleading requirements for claims of fraud imposed by" Rule 9(b). *Standing Op.*, 615 F. Supp. 2d at 251 n.1.

## B. The Government's Intervention

The government argues that the district court abused its discretion in denying the government's motion to intervene. According to the government, the court should have granted its motion to intervene as of right under Rule 24(a)(1) or (a)(2), or alternatively the government should have been permitted to intervene under Rule 24(b)(1)(B). Rule 24(a)(2) requires the court to allow anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." With regard to that subpart, the government specifically argues that it has an interest in seeing the patent statute enforced, in preventing the distribution of falsely marked items, and in receiving half the statutory damages. Without intervention, according to the government, the disposition of this action might prejudice the government's ability to protect its interests, which have not been adequately represented by Stauffer.

Brooks Brothers responds that Rule 24(a)(2) does not apply because the district court's decision would not prevent the United States from bringing its own action.

We review the district court's denial of intervention under Rule 24 under regional circuit law, in this case that of the Second Circuit. *Ericsson Inc. v. InterDigital Commc'ns. Corp.*, 418 F.3d 1217, 1220–21 (Fed. Cir. 2005). The Second Circuit reviews denials of motions to intervene under Rule 24 for an abuse of discretion. *Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006). However, a court "by definition abuses its discretion when it makes an error of law." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 98 (2d Cir. 2007). We agree with the government that the district court made an error of law in denying the government's motion to intervene under Rule 24(a)(2). Because we decide the issue on that basis, we need not address the government's arguments with respect to subparts (a)(1) and (b)(1)(B).

Contrary to Brooks Brothers' position, the government has an interest in enforcement of its laws and in one half the fine that Stauffer claims, disposing of the action would "as a practical matter impair or impede the [government's] ability to protect its interest," and Stauffer may not adequately represent that interest. Rule 24(a)(2). As an initial matter, Brooks Brothers does not contest the government's assertion that Stauffer does not adequately represent the United States' interest in this case.

Furthermore, the government would not be able to recover a fine from Brooks Brothers if Stauffer loses, as *res judicata* would attach to claims against Brooks Brothers for the particular markings at issue. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 94 (2d Cir.

2008) ("[T]he United States might become bound by *res judicata* or collateral estoppel as a result of the actions of a *pro se* in bringing and losing a *qui tam* action.") (citing *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126–27 (9th Cir. 2007) ("*[Q]ui tam* relators are not prosecuting only their 'own case' but also representing the United States and binding it to any adverse judgment the relators may obtain.")).  Thus, even though, as the district court noted, "the issue of the government's ability to bring an action pursuant to section 292" in general was not presented, *Intervention Op.*, 2009 U.S. Dist. Lexis 51166, at *12, the United States' ability to protect its interest *in this particular case* would be impaired by disposing of this action without the government's intervention.  We therefore reverse the district court's decision denying the government's motion to intervene.

## CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive.[4]  Accordingly, the judgment of the district court is

**REVERSED and REMANDED**

---

[4]    In his brief, Stauffer also requests that the case be reassigned to a different judge on remand.  He has not presented any argument as to why he requests reassignment, nor have the district court's decisions shown any basis for doing so.  We therefore deny Stauffer's request.