Rex T. PELOTE, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.*

No. 08–CF–534.

District of Columbia Court of Appeals.

Argued Nov. 17, 2009.

Decided June 16, 2011.

---

* The case was initially brought in the name of the United States, but was subsequently re-captioned as "District of Columbia v. Rex T. Pelote" and prosecuted by the Attorney General for the District of Columbia. See discussion *infra*.

Christine Pembroke, Washington, DC, for appellant.

John J. Woykovsky, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.

Before RUIZ and THOMPSON, Associate Judges, and FERREN, Senior Judge.

PER CURIAM:

Appellant was convicted on one count each of fleeing from a law enforcement officer [1] and reckless driving.[2] He received consecutive prison sentences of 28 months for the flight conviction and three months for reckless driving, to be followed by three years of supervised release. He contends that (1) the District of Columbia lacked authority to prosecute the flight charge; (2) the trial court committed reversible error by denying his motion for a mistrial and allowing the trial to proceed once the jury had heard that appellant was under surveillance for criminal activity not at issue in this case; and (3) the convictions merge under the double jeopardy clause of the Fifth Amendment, requiring that one be vacated. We reject the first two contentions, agree with the third, and thus remand for vacation of one of appellant's two convictions.

---

1. D.C.Code § 50–2201.05b (b)(2) (Supp. 2008).

2. D.C.Code § 50–2201.04(b) (2001).

## I.

At trial, Officer Mike Derian from the Metropolitan Police Department testified that at 3:00 a.m. on February 25, 2007, he and his partner, Officer Justin Linville, "were conducting a surveillance operation." Officer Derian saw a man, whom he identified as appellant, leave a building near the corner of 21st and G Streets, N.E., enter a Lexus coupe parked nearby, and drive away. Derian radioed his partner, who picked him up, and the two followed appellant. At this point in the testimony defense counsel objected, arguing that the officers had been "staking out" appellant and that the government had not advised counsel, during discovery, that his client had been under surveillance. The government replied that Officer Derian had never said he was investigating appellant, and that the surveillance had nothing to do with the charged offenses. Counsel moved for a mistrial, which the court denied as premature, indicating that counsel could cross-examine the officer about any implication that the officers had been investigating appellant.

Thereafter, Officer Derian testified that, upon seeing appellant "roll through" a stop sign, the officers turned on their squad car's emergency equipment and appellant sped away. After a high-speed chase during which appellant drove through several stop signs and a red light—forcing other cars to stop to avoid a collision—the officers broke off their pursuit because of a concern for public safety. Officer Derian added that, although it was 3:00 a.m. when he first saw appellant get into the Lexus, he could see appellant clearly because of the street lights nearby. Officer Linville also testified, offering essentially the same testimony as that of his partner.

## II.

■ On November 6, 2009, less than two weeks before oral argument in this court, appellant filed a motion for summary disposition citing *In re Crawley*, 978 A.2d 608 (D.C.2009), for the proposition that the District of Columbia Office of the Attorney General (OAG) lacked authority to prosecute him on the flight charge. His motion notes his indictment at the instance of the United States Attorney's Office (USAO), and argues that the USAO alone has authority to prosecute this felony in the District of Columbia. The District replies that the USAO properly "handed over" its prosecutorial authority to the OAG, citing a District statute that authorizes the USAO to consent to OAG prosecution of an offense, ordinarily charged by the United States, when joined with an offense properly brought by the District of Columbia.[3]

■ Appellant did not raise this argument at trial, and thus we review for plain error. *See United States v. Olano*, 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123

---

**3.** D.C.Code § 23–101(d) and (e) (2001) provide:

(d) An indictment or information brought in the name of the United States may include, in addition to offenses prosecutable by the United States, offenses prosecutable by the District of Columbia, and such prosecution may be conducted either solely by the Corporation Counsel [n/k/a Attorney General] or his assistants or solely by the United States attorney or his assistants if the other prosecuting authority consents.

(e) Separate indictments or informations, or both, charging offenses prosecutable by the District of Columbia and by the United States may be joined for trial if the offenses charged therein could have been joined in the same indictment. Such prosecution may be conducted either solely by the Corporation Counsel [n/k/a Attorney General] or his assistants or solely by the United States attorney or his assistants if the other prosecuting authority consents.

*See also* 28 U.S.C. § 543 (2010).

L.Ed.2d 508 (1993); Super Ct.Crim. R. 52(b) (2006). We find none. Appellant contends that the OAG's flight prosecution is "fatally defective for jurisdictional reasons," an argument we have rejected by calling the issue "procedural[,] . . . without effect upon the court's jurisdiction." *In re Marshall*, 467 A.2d 979, 980 (D.C.1983) (per curiam). But assume, for the sake of argument, that there was "error" that is "plain." Appellant cannot establish the third requirement under plain error review: that his "substantial rights" were affected. *Olano*, 507 U.S. at 732, 113 S.Ct. 1770. More specifically, he cannot show that, but for the error—that is, if instead of the OAG the USAO had been the prosecutor—there is a reasonable probability that the result of the trial would have been different. *See Thomas v. United States*, 914 A.2d 1, 21 (D.C.2006) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)). As the District notes in its response, "the evidence at trial would have been the same, regardless of which prosecuting authority handled the case." Appellant's argument accordingly fails.

### III.

■ Appellant relies, next, on an "other crimes" argument, claiming trial court error in denying his motions for a mistrial.[4] He contends that the officers' testimony

that they were conducting a surveillance operation when they observed and chased appellant prejudiced him unduly by suggesting—without regard to the events at issue—that appellant was a man of bad, indeed criminal, character. *See Robinson v. United States*, 623 A.2d 1234, 1238 (D.C. 1993) (citing, among others, *Drew v. United States*, 331 F.2d 85, 89–90, 118 U.S.App. D.C. 11, 15–16 (1964)). The trial court rejected this argument, ruling that information about the surveillance had been too limited to cause undue prejudice and intimating that counsel himself, not the government, had been responsible for highlighting the issue. The record supports the trial court here.

■ Although not discussed as such at trial, we are satisfied that the limited surveillance evidence of record is not traditional *Drew*, "other crimes" evidence but, rather, comes within the well-established teaching of *Toliver v. United States*, 468 A.2d 958 (D.C.1983).[5] *Toliver* permits evidence of other crimes when relevant "to complete the story of the crime on trial by proving its immediate context." *Id.* at 960. (quoting McCORMICK ON EVIDENCE § 190 (2d ed.1972)). *Accord Johnson v. United States*, 683 A.2d 1087, 1098 (D.C.1996) (en banc), *cert. denied*, 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997) (evidence of "another crime" admissible when

---

4. At trial, referencing his "Rosser letter," *see Rosser v. United States*, 381 A.2d 598 (D.C. 1977), and Super. Ct.Crim. R. 16, counsel focused primarily on the government's failure to inform the defense during discovery that appellant had been under surveillance, calling its mention at trial an "ambush." The trial court faulted the government for not uncovering and disclosing the surveillance evidence so that the issue could have been "essentially disposed of" before trial, presumably by a stipulation that identification was not at issue. The court, however, found the *Rosser* letter and Rule 16 inapplicable—rulings that were

not challenged on appeal and, even if questionable (an issue we do not address), were eclipsed by the court's later ruling, discussed immediately below, that the surveillance evidence was not unduly prejudicial to the defense.

5. As noted in *In re O.L.*, 584 A.2d 1230, 1232 (D.C.1990), we are free to affirm for reasons different from those relied on by the trial judge. Our reliance on *Toliver* is consistent with the trial court's perception of the surveillance evidence and its negligible impact.

"necessary to place the charged crime in an understandable context").

Because the police gave up the chase to avoid further danger to the public, the government had to be able to show why the officers could identify appellant later, as there was no way that they could have identified him merely from seeing his car go through several stop signs and a red light. The prosecution, therefore—not knowing whether identification would be a contested issue—had to put the eventual identification evidence in "understandable context," and thus preempt the issue, by eliciting evidence that the officers had seen appellant leave the building near 21st and G Streets, N.E. and get into the car.[6]

 Unlike forbidden other crimes (*Drew*) evidence, *Toliver* evidence is presumptively admissible if relevant. *See Rodriguez, supra,* note 6, 915 A.2d at 385–86. On this record, moreover, we are satisfied that the probative value of the sur-

veillance testimony "substantially outweighed" its "prejudicial effect." *Id.* at 386–87; *see Johnson v. United States,* 683 A.2d 1087, 1089 (D.C.1996) (en banc). Unlike some admissible *Toliver* evidence, *see supra,* note 6, the surveillance testimony did not implicate appellant in any crime. Furthermore, as the trial court observed, the defense, not the government, at least twice asked questions of Officer Linville that appeared intended to remind the jury about the surveillance—quite possibly, thought the judge, to provoke a mistrial.[7] In addition, any further heightening of the jury's attention to the surveillance testimony was the fault not of the government, but of appellant himself, who fled at high speed—suggesting consciousness of guilt— when the police officers signaled him to stop. Finally, counsel never asked for a limiting instruction; his requested relief was mistrial or nothing, a remedy well in excess of the harm he was claiming.[8] In

---

6. *See, e.g., Rodriguez v. United States,* 915 A.2d 380, 384–87 (D.C.2007) (evidence that police officers recognized appellant from victim's description based on "prior contacts" and knowing him "from the area" admissible to explain why officers included appellant's photograph in photo array for purposes of identification); *Durham v. United States,* 743 A.2d 196, 206–07 (D.C.1999) (testimony that police officer had seen appellant walking up and down block, stopping only to reach into car that pulled up, served to explain how appellant came to attention of police and why officer was in position to see specific acts that prompted arrest); *McGriff v. United States,* 705 A.2d 282, 286–87 (D.C.1997) (evidence of appellant's previous traffic violations placed in context his subsequent arrest for possession of weapons and ammunition); *Perritt v. United States,* 640 A.2d 702, 704–06 (D.C.1994) (police officer testimony regarding investigative procedures employed in case admissible because jury entitled to know circumstances culminating in courtroom identification); *Ford v. United States,* 396 A.2d 191, 193 (D.C.1978) (police officer testimony attributing discovery of heroin on appellant to

arrest warrant officer used to justify approaching him).

7. In cross-examining officer Linville, defense counsel asked, "So because you see a person get in a vehicle, you follow them?" The officer replied, "We were conducting surveillance in Langston Terrace. Then Officer Derian said he got in the vehicle so we followed the vehicle." Counsel asked again: "And that was only because, that was for virtually no reason just because he got in a vehicle"? The officer repeated: "We were conducting surveillance on the vehicle in Langston Terrace." At this point the government objected, and the court noted: "It seems to me what's going on here is an effort to pull the issue of surveillance out of this witness to assure a motion for a mistrial."

8. The closest the government came to connecting the earlier surveillance to the flight was an oblique reference. On redirect examination, counsel for the government asked Officer Derian: "Can you give us an idea what was going on through your mind at that time like what was happening during this chase?" The officer replied, in reference to appellant:

sum, given the record before us and the applicable case law, we perceive no reversible error attributable to the surveillance evidence.

### IV.

■■■ Appellant asks for reversal of either (but only one) conviction by claiming violation of the double jeopardy clause of the Fifth Amendment, which protects against multiple punishments for the same offense. *See Wilson v. United States,* 528 A.2d 876, 879 (D.C.1987) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). If the legislature so intends, however, a single transaction may generate more than one offense under separate statutes, without amounting to double jeopardy. *Id.* (citing *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)). Moreover, the legislative intent to do so— or not—is presumptively to be found in an elements analysis under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), unless that presumptive analysis is overcome "by a clear indication of contrary legislative intent" reflecting a different interpretive approach. *Malloy v. United States,* 797 A.2d 687, 691 (D.C.2002) (quoting *Missouri v. Hunter,* 459 U.S. 359, 367–68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)).[9]

The first statute at issue, D.C.Code § 50–2201.04(b), proscribes reckless driving:

(b) Any person who drives any vehicle upon a highway carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.

Next, D.C.Code § 50–2201.05b (b)(1) and (2) (Supp.2008) criminalizes flight from a law enforcement officer. The first subsection enacts a misdemeanor; the second, a felony:

(1) An operator of a motor vehicle who knowingly fails or refuses to bring the motor vehicle to an immediate stop, or who flees or attempts to elude a law enforcement officer, following a law enforcement officer's signal to bring the motor vehicle to a stop, shall be fined not more than $1,000, or imprisoned for not more than 180 days, or both.

(2) An operator of a motor vehicle who violates paragraph (1) of this subsection *and while doing so drives the motor vehicle in a manner that would constitute reckless driving under § 50–2201.04(b),* or causes property damage or bodily injury, shall be fined not more than $5,000, or imprisoned for not more than 5 years, or both.

(Emphasis added.)

Appellant contends, first, that *Blockburger* analysis applies, and thus that the offenses will merge unless each contains at least one element which the other does not. *See Blockburger,* 284 U.S. at 304, 52

---

"I needed to put this gentleman in that car." The trial court sustained a defense objection, denied a renewed motion for a mistrial, and informed the jury that it was sustaining the objection and striking the officer's response from the record.

9. In this jurisdiction presumptive *Blockburger* analysis has been incorporated by statute. D.C.Code § 23–112 (2001) provides:

A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not.

S.Ct. 180. Next, says appellant, subsection (2) immediately above, a "felony fleeing" provision, incorporates the reckless driving statute as a whole by adding the italicized language to the "misdemeanor fleeing" provision, subsection (1). As a result, he concludes, because the reckless driving statute does not include any element of the offense not included in the felony fleeing provision, the two must merge under *Blockburger.*

Appellant's analysis, therefore, turns on full incorporation of the reckless driving statute in subsection (2) governing felony flight. As background, we observe, first, that there can be no question that convictions under sections 50–2201.05b (b)(1) for misdemeanor flight and 50–2201.04(b) for reckless driving do not merge. The former requires a law enforcement officer's signal to stop not found in the latter, whereas the latter has elements of danger to persons or property not found in the former. Thus, the question becomes whether the Council of the District of Columbia, when enacting the felony flight provision, intended to eliminate simultaneous conviction for felony flight and reckless driving—that is, to merge the two offenses into felony flight—in contrast with the dual convictions allowed for misdemeanor flight and reckless driving. *See Thomas v. United States,* 602 A.2d 647, 649–50 (D.C.1992) (court "must ascertain what the legislature intended by enacting the two provisions").

To put the question in context, we begin with the legislative history of the flight statute, D.C.Code § 50–2201.05b. The Council's Committee on the Judiciary, in forwarding to the Council Bill 15–0759, the "Fleeing from Law Enforcement Prohibition Act of 2004," proposed only the misdemeanor provision now contained in subsection (1); it rejected proposals by the USAO and the Public Defender Service for "a multiple part statute" containing additional penalties for causing injury or death during flight. The Committee reasoned that "other provisions in the Code," such as those for "reckless driving," "property damage," and "resisting arrest," could "be used to impose additional penalties depending on the situation." The Committee stressed that "the penalty for fleeing could be aggregated with any other penalties in the Code as needed." The Council, however, when enacting the flight statute, added subsection (2), the felony provision; it preferred to place that additional penalty, based on reckless driving, in the flight statute itself rather than relying on aggregation of the misdemeanor flight and reckless driving statutes to enhance the penalty. Accordingly, whether reckless driving was to increase the penalty for flight from a law enforcement officer through aggregation with § 50–2201.04(b), as the Committee anticipated, or through a subsection of the flight statute itself, as the Council eventually concluded, the legislative intent clearly was to permit an enhanced penalty for flight—indeed, felony treatment—when danger to others or property was involved. But the question remains: was that intent satisfied by the felony treatment alone, as appellant contends, or through a compound penalty for felony flight and reckless driving, as the government argues?

This question must be answered by a *Blockburger* analysis of the felony flight and reckless driving provisions. The felony flight provision, subsection (2), includes an element—"a law enforcement officer's signal to bring the motor vehicle to a stop"—not found in the reckless driving statute. Appellant's position, therefore, as indicated earlier, depends on demonstrating that felony flight subsection (2) incorporates the reckless driving statute in full, leaving no element of that statute beyond reach of the felony.

The reckless driving statute, § 50–2201.04(b), has two basic elements, one

mental ("heedlessly in willful or wanton disregard" or "without due caution and circumspection"), the other action ("at a speed or in a manner so as to endanger ... person or property"). In contrast, § 50–2201.05b (b)(2), the felony flight provision is less differentiated, more conclusory (drives "in a manner that would constitute reckless driving under § 50–2201.04(b), or causes property damage or bodily injury"). The government argues that the word "manner" in § 50–2201.05b (b)(2), as in § 50–2201.04(b) itself, describes only the action element—"the movement of the car"; it does not include "the driver's state of mind." Therefore, says the government, the reckless driving statute, § 50–2201.04(b), contains an element of the offense—a mental element—not embraced by the merely mechanical recklessness sufficient to enhance the penalty to felony status under the flight statute, § 50–2201.05b (b)(2). According to *Blockburger*, concludes the government, appellant's merger argument fails.

The government's argument has force. On the other hand, the felony flight provision, § 50–2201.05b (b)(2), refers to driving "the motor vehicle in a manner *that would constitute reckless driving* under § 50–2201.04(b)." As appellant contends, the italicized words appear to embrace all elements of reckless driving, not just the action—"speed" and "manner"—component. The word "constitute" appears to cover reckless driving as a whole.

▉ As noted earlier, the legislative history—a committee report—addresses only the misdemeanor flight provision of the statute. And, given two plausible interpretations, the statutory language of the felony flight provision itself is ambiguous (although on balance we would say that appellant probably has the better argument). Under these circumstances, we believe that the felony flight provision,

§ 50–2201.05b (b)(2), is a clear candidate for application of the rule of lenity. As we have said: "When a penal statute is capable of two or more reasonable constructions the 'rule of lenity' directs our attention to the least harsh among them." *U.S. Parole Comm'n v. Noble*, 693 A.2d 1084, 1103 (D.C.1997) (citation and internal quotation marks omitted). But this rule "can tip the balance in favor of criminal defendants only where, exclusive of the rule, a penal statute's language, structure, purpose and legislative history leave[ ] its meaning genuinely in doubt." *Holloway v. United States*, 951 A.2d 59, 65 (D.C.2008) (citation and internal quotation marks omitted).

Having found that language and legislative history direct us to the rule of lenity, we have only to examine whether the structure and purpose of the felony flight statute provide any guide to interpretation that would indicate the rule should not be employed. The government offers one argument that would appear to address these criteria. It says that appellant's argument "would lead to implications for sentencing" similar to those, on another occasion, we found "absurd." *See Thomas*, 602 A.2d at 650, 652–53 (concluding that possession of a firearm during a crime of violence did not merge with crime of drug distribution while armed because, *inter alia*, merger would produce absurd results).

The government notes first that the reckless driving statute provides for enhanced penalties of up to a year in prison and a $3,000 fine for repeat offenders during a specified two-year period.

> Any individual violating any provision of this section where the offense constitutes reckless driving shall upon conviction for the 1st offense be fined not more than $500 or imprisoned not more than 3 months, or both; upon conviction for the 2nd offense committed within a

2–year period shall be fined not more than $1,000 or imprisoned not more than 1 year, or both; and upon conviction for the 3rd or any subsequent offense committed within a 2–year period of the 1st offense shall be fined not more than $3,000 or imprisoned not more than 1 year, or both.

D.C.Code § 50–2201.04(c) (2001). If, adds the government, a reckless driving conviction were to merge into a felony flight conviction, a second reckless driving conviction within two years would be limited to a first-offense penalty of three months of imprisonment and a $500 fine rather than the second-offense penalty of up to one-year of imprisonment and the $1,000 fine authorized under D.C.Code § 50–2201.04(c).

That argument does not go far enough. Given the trial court's authority to impose imprisonment for up to five years and a fine of up to $5,000 for a first offense under the felony flight statute, § 50–2201.05b (b)(2), we cannot say that the unavailability of enhancement for a second reckless driving offense under § 50–2201.04(c) if the first offense is merged into the felony flight statute would produce an absurd result. The government's argument, therefore, offers nothing about statutory structure or purpose that would counter the lenity argument.

Accordingly, we conclude, as appellant contends, that D.C.Code § 50–2201.05b (b)(2) fully incorporates the reckless driving statute, D.C.Code § 50–2201.04(b). Only one or the other statute may be applied to conviction for the single occurrence at issue here. We, therefore, must remand for the trial court to vacate one of appellant's convictions, as appropriate.

*So ordered.*