*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CT-810

MICHAEL ANTHONY CROCKETT, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CTF-16205-11)

(Hon. Patricia A. Wynn, Trial Judge)

(Argued January 23, 2014                    Decided July 24, 2014)

*Sarah A. Stockwell* for appellant.

*John J. Woykovsky*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Rosalyn C. Groce*, Deputy Solicitor General, were on the motion for summary affirmance and the supplemental briefs, for appellee.

Before GLICKMAN and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

MCLEESE, *Associate Judge*:  Appellant Michael Crockett seeks reversal of his conviction for fleeing from a law-enforcement officer, arguing that he was prosecuted by the wrong governmental entity and that the evidence was insufficient to support his conviction.  We affirm.

**I.**

Viewed in the light most favorable to the verdict, the evidence at trial established the following. In August 2011, Metropolitan Police Department Officer Brian Hallahan was driving north on Kansas Avenue NW, in a marked police cruiser. Officer Hallahan saw Mr. Crockett make an illegal U-turn and continue north onto Kansas Avenue. Officer Hallahan veered into the oncoming-traffic lane in order to avoid a collision with Mr. Crockett. After Mr. Crockett sped past Officer Hallahan from the parking lane on the right, Officer Hallahan was driving directly behind Mr. Crockett on Kansas Avenue.

Officer Hallahan turned on his cruiser's emergency lights and sirens. Although Mr. Crockett saw the police lights and knew that the police wanted him to pull over, he did not stop immediately, instead speeding up slightly and then making a right turn, onto Webster Street NW. Mr. Crockett slowed down his car, bailed out, and fled -- leaving the car running and the keys in the ignition. Mr. Crockett's car did not stop until its tires hit the curb. Officer Hallahan pursued Mr. Crockett on foot, eventually finding Mr. Crockett crouched behind a garbage can in a dead-end alley. Mr. Crockett fled again, but Officer Hallahan and another

officer caught Mr. Crockett. Mr. Crockett was driving the car without a valid driver's license.

The Office of the Attorney General for the District of Columbia ("OAG") charged Mr. Crockett with fleeing from a law-enforcement officer, in violation of D.C. Code § 50-2201.05b (b)(1) (2012 Repl.). The trial court found Mr. Crockett guilty in a bench trial, concluding beyond a reasonable doubt that Mr. Crockett had knowingly refused to bring his car to an immediate stop and had attempted to elude Officer Hallahan. The trial court recognized that it is an affirmative defense to a charge of fleeing "if the defendant can show, by a preponderance of the evidence, that the failure to stop immediately was based upon a reasonable belief that the defendant's personal safety is at risk." D.C. Code § 50-2201.05b (c). The trial court rejected that defense, explaining that there had been no evidence that Mr. Crockett had failed to stop based on a reasonable fear for his personal safety. Rather, the trial court found that Mr. Crockett refused to stop immediately because he wanted to get the car back to his mother, from whom he had borrowed it, and because he wanted to avoid getting in trouble for driving without a license.

**II.**

The District of Columbia Code expressly authorizes the OAG to prosecute fleeing charges. D.C. Code § 50-2201.05b (e). Nevertheless, the parties agree that the fleeing charge in this case should have been prosecuted by the United States Attorney's Office ("USAO"), not the OAG, because the District of Columbia Council lacked authority under the Home Rule Act, D.C. Code § 1-201.01 et seq. (2012 Repl.), to grant authority to the OAG to prosecute that offense. *See* D.C. Code § 23-101 (2012 Repl.) (governing respective authority of USAO and OAG to prosecute violations of D.C. criminal laws). *See generally In re Crawley*, 978 A.2d 608 (D.C. 2009). Mr. Crockett argues that the OAG therefore lacked standing to prosecute this case. Mr. Crockett further argues that the judgment must be reversed, despite his failure to raise this issue in the trial court, because standing is a jurisdictional issue. Finally, Mr. Crockett contends that in any event reversal is required under the plain-error standard. We find no basis for reversal.

We have recently held that prosecution of a fleeing charge by the OAG rather than the USAO is a procedural rather than a jurisdictional defect. *Pelote v. United States*, 21 A.3d 599, 602 (D.C. 2011) (per curiam) (prosecution of fleeing charge by OAG rather than USAO is "procedural" error that is "without effect

upon the court's jurisdiction") (internal quotation marks omitted); *cf. In re Marshall*, 467 A.2d 979, 980 (D.C. 1983) (per curiam) (OAG's involvement in contempt proceedings, in violation of D.C. Code § 23-101, did not deprive court of subject-matter jurisdiction). Although Mr. Crockett argues that *Pelote* was incorrectly decided, even if that were true we would be bound by *Pelote*, at least in the absence of contrary authority from the Supreme Court. *See, e.g.*, *Lewis v. United States*, 10 A.3d 646, 658 n.7 (D.C. 2010) ("even if we were to disagree with our prior holdings . . . , we are bound by those decisions"); *Teoume-Lessane v. United States*, 931 A.2d 478, 494 (D.C. 2007) ("a panel cannot blindly follow a prior ruling in the face of clearly controlling doctrine later enunciated by the Supreme Court") (alteration and internal quotation marks omitted).

We acknowledge that the Supreme Court has treated as jurisdictional the question whether the petition for a writ of certiorari was filed by a proper representative of a party. *United States v. Providence Journal Co.*, 485 U.S. 693, 706 (1988) (dismissing writ of certiorari for want of jurisdiction, because petition for writ was filed on behalf of United States by special prosecutor who was not authorized to represent United States in Supreme Court, and petition therefore was not filed by party, as required under 28 U.S.C. § 1254 (1) (2012)). *Providence Journal* is distinguishable, however. The Superior Court has jurisdiction over "any

criminal case under any law applicable exclusively to the District of Columbia."
D.C. Code § 11-923 (b)(1) (2012 Repl.).  Thus, the Superior Court's jurisdiction is not explicitly tied to the identity of the party bringing the criminal action.  In addition, this court has jurisdiction over this appeal under D.C. Code § 11-721 (b) (2012 Repl.), because the notice of appeal was filed by Mr. Crockett, who indisputably is a proper party.  More generally, *Providence Journal* was decided before the recent emphasis, in both the Supreme Court and this court, on greater precision in the use of the term "jurisdiction."  *See, e.g.*, *Gatewood v. District of Columbia Water & Sewer Auth.*, 82 A.3d 41, 46-49 (D.C. 2013).  It is unclear whether *Providence Journal* establishes that the filing of a petition for a writ of certiorari by a person who lacked statutory authority to file the petition is a jurisdictional defect requiring dismissal even if the issue is not raised in a timely fashion.  For these reasons, we are bound by the holding in *Pelote* notwithstanding the decision in *Providence Journal*.[1]

---

[1]    Other courts have reached varying conclusions as to whether a prosecutor's lack of proper authority to conduct a criminal prosecution deprives the court of jurisdiction or otherwise requires dismissal or reversal.  *Compare, e.g.*, *State v. Abbott*, 356 N.W.2d 677, 679 (Minn. 1984) (even if prosecutor had not been properly appointed, no basis to grant new trial), *Dotson v. State*, 712 P.2d 365, 366-68 (Wyo. 1986) (fact that prosecutor was not member of Wyoming Bar did not deprive court of jurisdiction or provide basis for reversal), *Chronister v. State*, 931 S.W.2d 444, 444-45 (Ark. Ct. App. 1996) (even if city attorney lacked statutory authority to prosecute violation of state law, city attorney was acting as de facto officer whose actions were "valid and effectual"), *and People v. Scott*, 116

(continued…)

Mr. Crockett also argues that *Pelote* is factually distinguishable, because in that case the USAO filed the original charge, whereas in this case the OAG handled the entire prosecution. If the issue were one of standing, however, then the further conduct of the prosecution by the OAG in *Pelote* would seemingly have required dismissal even though the prosecution had been properly initiated by the USAO. *See, e.g.*, *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) ("Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, but Article III demands that an 'actual controversy' persist throughout all stages of litigation."). *See generally Padou v. District of Columbia*, 77 A.3d 383, 389 n.6 (D.C. 2013) ("Although Congress did not establish this court under Article III of the Constitution, we generally adhere to the case and controversy requirement of Article III as well as prudential principles of standing.") (internal

---

(…continued)
P.3d 1231, 1232-33 (Colo. App. 2004) ("defendant's challenge to the district attorney's prosecutorial authority does not raise an issue of subject matter jurisdiction"; court affirms conviction, relying on principle that district attorney was acting as "de facto officer" whose acts were valid and binding), *with, e.g.*, *United States v. Durham*, 941 F.2d 886, 891-93 (9th Cir. 1991) (if prosecution was conducted by Special Assistant United States Attorney who was not properly appointed and supervised, trial court lacked jurisdiction), *United States v. Garcia-Andrade*, No. 13-CR-993, 2013 WL 4027859, at *5-9 (S.D. Cal. Aug. 6, 2013) (dismissing prosecution for lack of jurisdiction because prosecutor lacked active bar license as required by applicable statutes), *and State v. Persons*, 528 N.W.2d 278, 279-80 (Minn. Ct. App. 1995) (complaint signed by prosecutor from wrong city should have been dismissed, because complaint was nullity and defendant could not waive defect).

quotation marks omitted). We therefore do not agree that *Pelote*'s jurisdictional holding can be distinguished on this basis.[2]

Mr. Crockett further suggests that *Pelote* did not explicitly consider whether the OAG has standing to prosecute an offense that the OAG lacks statutory authority to prosecute. Thus, Mr. Crockett suggests, a division of this court would be free to reverse in this case on the ground that the OAG lacked standing. Assuming that we are free to consider the issue notwithstanding *Pelote*, we conclude that the OAG had standing.

---

[2] At oral argument, Mr. Crockett suggested that *Pelote* could be distinguished from the present case because the caption in *Pelote* correctly designated the United States as the prosecuting party, even if the later stages of the prosecution were conducted by an attorney from the OAG. In contrast, the caption in the present case incorrectly designates the District of Columbia as the prosecuting party. For the reasons explained in text, we conclude that the error in permitting the District of Columbia to act as the prosecutor in this matter is not jurisdictional and, given Mr. Crockett's failure to raise the point in a timely manner, does not require reversal. The fact that the caption named the District of Columbia rather than the United States as the prosecuting party does not warrant a different conclusion. *Cf. In re Robertson*, 19 A.3d 751, 759 (D.C. 2008) ("Nor does it matter that the contempt action here was not actually captioned in the name of the sovereign . . . . As the Supreme Court has made clear, what matters is the substance of the proceeding and the character of the relief, rather than the label that the state or the parties have placed on the action.") (internal quotation marks omitted).

The District of Columbia Council enacted the fleeing provision under which Mr. Crockett was prosecuted. Fleeing Law Enforcement Prohibition Amendment Act of 2004, D.C. Act 15-528, § 2 (b), 51 D.C. Reg. 9600, 9600-01 (2004) (codified at D.C. Code § 50-2201.05b). The Mayor of the District of Columbia is responsible, among other things, for "the proper execution of all laws relating to the District . . . ." D.C. Code § 1-204.22 (2012 Repl.). *See generally, e.g.*, *Williams v. United States*, 293 A.2d 484, 487 (D.C. 1972) (noting that "the executive [has] responsibility for the enforcement of the criminal laws"). The Attorney General for the District of Columbia is responsible for "all law business of the . . . District" and for "upholding the public interest." D.C. Code § 1-301.81 (a)(1) (2012 Repl.). The Attorney General is also authorized to "intervene in legal proceedings on behalf of this public interest." *Id.* In our view, these provisions establish that the Attorney General has an interest, sufficient to confer standing, in the enforcement of the criminal laws of the District of Columbia. *Cf., e.g.*, *Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010) ("The parties have not cited any case in which the government has been denied standing to enforce its own law."); *United States v. Yarbrough*, 452 F. App'x 186, 189 (3d Cir. 2011) ("Because the Government has standing to enforce its own laws, [appellant's] argument that Government has failed to allege an injury in fact is frivolous."). In other words, the difficulty in this case is not that the OAG

lacks a cognizable interest in the enforcement of a provision of the criminal law of the District of Columbia, but rather that, as a matter of statutory law, authority to prosecute the offense belongs to the USAO rather than the OAG.

Although we conclude that the error in this case was not jurisdictional in character, we must consider whether Mr. Crockett is nevertheless entitled to relief, despite his failure to make a timely objection, under the plain-error doctrine. *See* Super. Ct. Crim. R. 52 (b) ("Plain errors or errors affecting substantial rights may be noticed although they were not brought to the attention of the Court."). We addressed the same issue in *Pelote*, concluding that reversal was not warranted. 21 A.3d at 601-02. As we explained, Mr. Pelote could not "show that, but for the error – that is, if instead of the OAG the USAO had been the prosecutor – there is a reasonable probability that the result of the trial would have been different." *Id.* at 602. The same is true in the present case, and we therefore conclude that Mr. Crockett is not entitled to relief under the plain-error standard.[3]

---

[3] In *In re J.H.*, 47 A.3d 539, 539 (D.C. 2012) (per curiam), this court reversed a fleeing conviction because the OAG rather than the USAO had prosecuted the case. In that case, however, the defendant had raised a timely objection in the trial court, and the plain-error standard therefore was not applicable. Rather, reversal was required because the government could not carry the burden of showing that the error was harmless. *See, e.g.*, *Arthur v. United States*, 986 A.2d 398, 413 (D.C. 2009). Furthermore, we note that in *In re Taylor*, 73 A.3d 85, 99-103 (D.C. 2013), we held that a defendant who was unlawfully

(continued…)

**III.**

Mr. Crockett also challenges the sufficiency of the evidence. In reviewing the sufficiency of the evidence to support a conviction, we "view[] the evidence in the light most favorable to the government, giving full play to the right of the [finder of fact] to determine credibility, weigh the evidence, and draw justifiable inferences of fact[.]" *Gibson v. United States*, 792 A.2d 1059, 1065 (D.C. 2002) (internal quotation marks omitted). This court will not reverse a trial court's factual findings after a bench trial unless those findings are "plainly wrong or without evidence to support [them]." D.C. Code § 17-305 (a) (2012 Repl.).

As previously noted, D.C. Code § 50-2201.05b (c) provides an affirmative defense to the charge of fleeing, applicable "if the defendant can show, by a preponderance of the evidence, that the failure to stop immediately was based upon a reasonable belief that the defendant's personal safety is at risk." The court may

---

(…continued)
prosecuted for criminal contempt by an interested private party was not required under the plain-error standard to show that the error affected the outcome of the trial. In reaching that conclusion, we emphasized the "fundamental" importance of having prosecutions conducted by "a disinterested prosecuting attorney acting as an agent of the government." 73 A.3d at 100, 102. In contrast, the error in *Pelote* and in this case involved which disinterested prosecutor properly had authority to conduct the prosecution.

consider the following factors in determining whether the defendant has satisfied this burden: "(1) [t]he time and location of the event;" (2) whether the law enforcement officer was in a clearly marked vehicle; "(3) [t]he defendant's conduct while being followed by the law enforcement officer; (4) [w]hether the defendant stopped at the first available reasonably lighted or populated area; and (5) [a]ny other factor the court considers relevant." *Id.*

Mr. Crockett argues that the evidence was insufficient to permit the trial court to reject his personal-safety defense, because stopping immediately would have been unsafe. We conclude that the trial court reasonably rejected Mr. Crockett's personal-safety defense. As the trial court noted, Mr. Crockett did not explicitly testify that he believed his personal safety would have been in danger had he stopped immediately. Rather, when Mr. Crockett initially explained why he did not stop immediately and instead fled, he testified that he was concerned about his mother's car being impounded and was afraid that he might be arrested for driving without a valid license. Mr. Crockett later testified that there was no open parking spot into which he could have pulled the car, but the trial court expressly discredited that testimony. We see no basis upon which to second-guess that credibility determination. *See generally, e.g.*, *Price v. United States*, 985 A.2d

434, 439 n.5 (D.C. 2009) ("credibility determinations were the appropriate function of the fact finder and are beyond the scope of appellate review").

The judgment of the Superior Court is therefore

*Affirmed.*