Charles NOWLIN, Appellant,

v.

UNITED STATES, Appellee.

No. 99–CM–92.

District of Columbia Court of Appeals.

Argued Dec. 1, 2000.

Decided Sept. 27, 2001.

Christine Markel, Public Defender Service, with whom James Klein and Jaclyn Frankfurt, Public Defender Service, were on the brief, for appellant.

Earl M. Campbell, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, John R. Fisher, Elizabeth Trosman, and Karla–Dee Clark, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and WASHINGTON, Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge:

Appellant Charles Nowlin appeals from his conviction after a non-jury trial for second-degree theft in contravention of D.C.Code §§ 22–3811, –3812(b) (1996 & Supp.2000). Appellant's sole contention on appeal is that the evidence regarding his knowledge and intent was insufficient. Based upon our review of the record, we conclude that appellant's conviction must be reversed.

## I.

The evidence adduced at trial shows that on January 15, 1997, appellant Nowlin walked into Crestar Bank, presented his driver's license and Department of Human Services identification card and cashed a check made payable to him in the amount of $574. That check, numbered 6910, was

issued from Bladensburg Auto Body Shop and bore the purported signature of James Carson, a co-owner of the shop.

Sometime later that month Carson noticed that the balance in the auto shop's checking account was unusually low. Upon investigation, he discovered that check 6910 was neither written nor signed by him. In addition, he did not recognize the name to whom the check was made payable. Shortly after discovering the forged check, Carson fired two part-time employees he believed to have taken check 6910 along with several other "missing" company checks.

An investigator for Crestar Bank studied check 6910 and determined the branch where the check was cashed and the types of identification appellant presented. He also recovered the security camera videotape that had recorded the transaction. The videotape and a copy of the check were submitted to the Metropolitan Police Department Financial Crimes Unit. After comparing the videotaped images to a file photograph of appellant, the police arrested him.

During a bench trial, the government offered the testimony of bank and police investigators who identified appellant as the individual who cashed the check. They also called Carson who testified that he did not know or recognize appellant. The prosecutor asked Carson only two questions in this regard; the complete exchange was as follows:

Q: Who is the payee listed on the check?

A: Well, it looks like Charles Newman or something.

Q: Nowlin? Can you spell it?

A: N-O-W-L-E-N?

Q: Do you know that individual?

A: No.

Q: Have you ever seen that individual before?

A: No.

It was established that Carson's business partner, Owen Mulkey, was also authorized to sign checks on behalf of the auto shop account. Other than Carson, no one else from the auto body shop was called as a witness. Nor did the government call a handwriting expert to compare appellant's handwriting with the writing on the face of check 6910.

After the government concluded the presentation of its evidence, appellant moved for a judgment of acquittal. Appellant argued that the government failed to present sufficient evidence of his specific intent. When the trial court asked the government to state the elements as to knowledge and intent, the government replied that appellant was "in possession of a check which he either knows or should have reason to know has not been uttered by the rightful owner." The government asked the court to infer that (1) appellant never saw Carson sign the check over to him, (2) appellant knew or should have known he possessed the check wrongfully, and (3) appellant received funds that he knew or should have known were never paid to him by Carson or the auto body shop.

The trial court denied appellant's motion for judgment of acquittal. Appellant did not testify and presented no evidence. The trial court then made its ruling and found

that the face of the check, combined with the testimony of the owner, is sufficient to prove beyond a reasonable doubt that [appellant] knew that he didn't have a right to these funds. The check is made out to [appellant] from this auto body shop. The owner of the shop says that he's never had any dealings with [appellant], which means that

[appellant] presumably knew that he had never had any dealings with James Carson, who purportedly wrote this check. In addition, the check says that it's for auto repair, and [appellant] presumably knew that he had not done any auto repair work for this repair shop. Appellant was convicted and this appeal followed.

## II.

█ To convict appellant of second-degree theft under D.C.Code § 22–3811(b),[1] the government had to prove that (1) he wrongfully obtained the property of Crestar Bank, (2) that at the time he obtained it, he specifically intended "either to deprive [Crestar Bank] of a right to the property or a benefit of the property or to take or make use of the property for [himself] ... without authority or right," and (3) that the property had some value. Criminal Jury Instructions for the District of Columbia, No. 4.38 (4th ed.1993); *see also Cash v. United States,* 700 A.2d 1208, 1210–11 (D.C.1997). In this case, appellant disputes only the second element, arguing that the evidence was insufficient to show that he knew he had no right to the check and intended to deprive Crestar Bank of its property. He argues that any contrary conclusion is mere speculation.

█ When considering claims of evidentiary insufficiency in a criminal case, we view the evidence in the light most favorable to the government. *See Clyburn v. District of Columbia,* 741 A.2d 395, 396 (D.C.1999). We recognize the right of the fact-finder to weigh the evidence, resolve issues of credibility, and draw justifiable inferences of fact. *See id.* To prevail, appellant is required to show that the facts

did not amount to evidence upon which a reasonable mind could find guilt beyond a reasonable doubt. *See Mihas v. United States,* 618 A.2d 197, 200 (D.C.1992). The trial court's factual findings in a bench trial will not be overturned unless they are "plainly wrong" or "without evidence to support [them]." *Id.* (citation omitted). The government is not required to negate every possible suggestion of innocence. *See Monroe v. United States,* 598 A.2d 439, 440 n. 4 (D.C.1991).

█ Despite the deference afforded the trial court, "[t]he evidence must support an inference, rather than mere speculation, as to each element of an offense." *Head v. United States,* 451 A.2d 615, 622 (D.C.1982), *cert. denied,* 513 U.S. 854, 115 S.Ct. 156, 130 L.Ed.2d 95 (1994). Similarly, "[t]he evidence is insufficient ... if in order to convict, the jury is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Roy v. United States,* 652 A.2d 1098, 1103 (D.C.1995) (internal quotations omitted) (quoting *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987)).

█ The trial court concluded that the requisite knowledge and intent was established by (1) "the face of the check" and (2) the testimony of Carson. The face of the check adds little or nothing to the guilt of appellant. Carson testified that he did not write out the check and did not sign it. However, the government failed to call a handwriting expert who might have been able to conclude that the front of the check was completed by appellant and aid the court, as a trier of fact, in evaluating appellant's seemingly innocent acts. There-

---

1. D.C.Code § 22–3811(b) states:

    A person commits the offense of theft if that person wrongfully obtains or uses the property of another with intent:

    (1) To deprive the other of a right to the property or a benefit of the property; or
    (2) To appropriate the property to his or her own use or to the use of a third person.

fore, all that is reasonably certain from the evidence presented to the trial court is that Carson did not complete the check. Who may have completed and signed the check (and whether it was the same person) is left to speculation. Additionally, the fact that "auto repair" was written in on the memo line of the check is of minimal value. The memo line led the trial court to infer that appellant "knew that he had not done any auto repair work for this repair shop." This inference is unreasonable and not supported by the record. There is nothing in the record to indicate one way or the other whether appellant was entitled to compensation from Carson, Mulkey, or anyone at the auto shop.

Likewise the very limited testimony of Carson is insufficient to convict appellant, even when considered in conjunction with the face of check 6910. The trial court inferred from the fact that Carson did not know appellant that appellant "presumably knew that he had never had any dealings with James Carson." While we agree with this inference, we disagree with the next link in the chain of inferences the government argues in its brief, which is that it "was also reasonable to presume appellant knew he had not performed the repair work for Carson's shop." First of all, the auto shop was co-owned and, therefore, appellant may have performed services for Mulkey without Carson's knowledge or contrary to Carson's recollection. We do not know how big or how busy the auto shop was, nor whether an employee might have authorized the repair work with or without Carson's knowledge. Mulkey was not called to the witness stand nor was any other employee of the auto shop, and appellant's interaction with persons at the auto shop, other than Carson, is unknown. In apparent contrast to such speculation, the evidence does demonstrate that appellant did not behave peculiarly when cashing the check. He unabashedly presented two forms of his own identification to the bank teller.

More importantly, there was no evidence presented regarding how appellant came into possession of the check other than that Carson did not give it to appellant. Merely because Carson did not know appellant does not provide a foundation from which one can reasonably infer that appellant should have suspected the check was forged or that he was not entitled to it. Those who cash checks are not always personally familiar with those who sign them. Appellant need not necessarily have known or corresponded with Carson for the check to be valid. Additionally, the government's principal witness did not know whether the two employees he fired for allegedly stealing the check had any association with appellant. Given the limited testimony presented at trial, it remains mere conjecture that appellant knew that he was not entitled to the check.

The government is mistaken in its reliance upon *Zanders v. United States*, 678 A.2d 556 (D.C.1996). In *Zanders*, we considered whether the evidence was sufficient to sustain convictions for robbery, theft, and forgery and uttering. *See id.* at 559. The two defendants were found in possession of a stolen credit card and used it to make unauthorized purchases. *See id.* at 559–60. From the evidence presented in that case, including the testimony of the owner of the credit card, we concluded that it was reasonable to infer beyond a reasonable doubt that both defendants knew they had no authority to use the credit card and they specifically intended to deprive a shop owner of the items purchased using the stolen credit card. *See id.* at 565.

Credit cards and checks, however, are very different things. It would be a very different situation, one in which a reason-

able inference that appellant possessed the requisite knowledge element could be drawn, had appellant obtained funds from Crestar Bank using a stolen credit card that was in Carson's name alone. In this case, however, appellant simply cashed a check that had been made out to him and which was signed by one of two authorized individuals. Carson's testimony alone is insufficient to permit a reasonable trier of fact to infer that appellant knew the check was forged or that he was not entitled to it.

Finally, the government argues that appellant's unexplained or unsatisfactorily explained possession of recently stolen property may support a conviction of theft or receipt of stolen property. *See Byrd v. United States,* 598 A.2d 386, 393 (D.C. 1991) (en banc). From this the government argues it is reasonable to infer that appellant forged the check and cashed it knowing that it was forged. However, we decline to apply the inference in this case. While Carson testified that several checks were "missing," it is not clear that check 6910 was one such "missing" check. There is no testimony that 6910 fell within the range of check numbers "missing" or similar evidence which would lead one to conclude that check 6910 was necessarily stolen. Moreover, this argument was not presented to the trial court when it asked the government to present the evidence of knowledge and intent and is not mentioned in the trial court's findings. We conclude that the inference is inapplicable to the facts of this case.

### III.

Based upon the evidence presented at trial, we conclude that appellant's conviction was based upon impermissible inferences. Accordingly, appellant's conviction for second-degree theft is reversed. We remand the case to the trial court with directions to enter a judgment of acquittal.

*So ordered.*