Charles PRICE, Appellant,

v.

UNITED STATES, Appellee.

No. 08–CM–1649.

District of Columbia Court of Appeals.

Argued Nov. 23, 2009.

Decided Dec. 17, 2009.

Chantal Jean–Baptiste, appointed by the court, for appellant.

Ryan W. Bounds, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, John P. Mannarino and Katherine A. Sawyer, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ, Associate Judge, and NEBEKER and SCHWELB, Senior Judges.

RUIZ, Associate Judge:

Following a bench trial, appellant, Charles Price, was convicted of second-degree theft in violation of D.C.Code §§ 22–3211, –3212(b) (2001). On appeal, appellant argues that the trial court erred in (1) finding the evidence sufficient to convict him of the crime of theft, because the crime was not completed and did not support that he had the intent to steal; and (2) impermissibly shifting the burden of proof onto appellant in violation of his right to due process of law. For the reasons that follow, we affirm.

## I. Facts

On June 28, 2008, appellant and William C. Brady were observed, via closed-circuit surveillance video, by Police Officer and part-time Home Depot security officer, Anthony Wallace, entering the Home Depot store at 901 Rhode Island Avenue, N.E. Officer Wallace testified that appellant pushed an empty cart through some of the store's aisles before selecting "a large [can] of polyurethane" and placing it openly in his cart. As appellant pushed the cart with the polyurethane, he and Brady, who was trailing "three feet behind," went to the Inside Garden section of the store, which is located close to the exit. At that point, the surveillance cameras lost sight of the two men.

Jason Ford, a loss prevention officer who was on the floor near Inside Garden at the time, informed Officer Wallace that he saw appellant transfer the cart containing the polyurethane to Brady, and that the two men exchanged "a few words," although the officer did not know what was said. Appellant then exited the store, and Brady took the cart with the polyurethane to the customer service line for returning items. While waiting in line, he added a how-to book to the cart. Once at the cashier, Brady attempted to return the

unpurchased merchandise for store credit, but was apprehended as the transaction was being finalized. The record is unclear as to whether he physically received the gift card containing store credit. After detaining Brady, Officer Wallace used the surveillance cameras to locate appellant sitting outside the building on the curb, where he was detained.

Brady, who entered a plea of guilty to second-degree theft for his involvement in the incident, testified that appellant had no knowledge of, or participation in, his scheme to return the polyurethane and book for store credit. Brady testified that appellant had hired him to stain and seal appellant's porch for $200. Under their arrangement, appellant would provide the stain and tools needed for the job, while Brady would procure the polyurethane. Brady testified that appellant accompanied him to Home Depot to show him the type of polyurethane needed. Because the polyurethane cost $109, and he was to be paid $200 for the job, Brady said that he "decided to get slick" and return the merchandise for store credit, get another container of polyurethane, "and pay for it with the gift card." [1]

## II. Theft

■ In analyzing a sufficiency claim, "[w]e view the evidence in the light most favorable to the government, recognizing the province of the trier of fact to weigh the evidence, determine the credibility of the witnesses and to draw reasonable inferences from the testimony." *Dickerson v. United States,* 650 A.2d 680, 683 (D.C. 1994). In reviewing a bench trial, we will not reverse unless appellant "establish[es] that the trial court's factual findings are plainly wrong, or without evidence to sup-

port them." *Peery v. United States,* 849 A.2d 999, 1001 (D.C.2004) (citation omitted). Therefore, in order to prevail, appellant "must establish that the government presented 'no evidence' upon which a reasonable mind could find guilt beyond a reasonable doubt." *Id.*

■ To convict appellant of theft under D.C.Code § 22–3211, the government must prove that "(1) he [ ] wrongfully obtained the property of [Home Depot], (2) that at the time he obtained it, he specifically intended 'either to deprive [Home Depot] of a right to the property or a benefit of the property or to take or make use of the property for [himself] ... without authority or right,' and (3) that the property had some value." *Peery,* 849 A.2d at 1001 (quoting *Nowlin v. United States,* 782 A.2d 288, 291 (D.C.2001)). The statute defines "wrongfully obtains" as "(1) taking or exercising control over property; (2) making an unauthorized use, disposition, or transfer of an interest in or possession of property; or (3) obtaining property by trick, false pretense, false token, tampering, or deception." D.C.Code § 22–3211(a). "The fact that the possession was brief" or that the goods never left the store is immaterial. *Groomes v. United States,* 155 A.2d 73, 75 (D.C.1959).

The trial court found appellant guilty of stealing the polyurethane within the store, because "(a) [appellant] obtained the polyurethane when he took it off the shelf and took possession of it, (b) he did it wrongfully, and (c) he did it with the specific intent to deprive the owner of the right to or benefit from the property."

Appellant claims that the trial court erred in finding the evidence sufficient to convict him of stealing the polyurethane.

---

1. The government introduced into evidence, without objection, the return receipt indicating the total return value of the polyurethane

and how-to book to be $139, and Brady acknowledged that the price of the polyurethane was approximately $109.

His argument is twofold: (1) he never "wrongfully obtained" the polyurethane as required by the theft statute because Home Depot consented to his handling of the polyurethane within the store, he left empty-handed, and the polyurethane never left the store; and (2) his intent to steal is unsupported by the evidence, because he left the store before Brady attempted to return the polyurethane.

On the first point, appellant argues that because Home Depot permits customers to cart around unpaid-for products within the store, he did not "wrongfully obtain[ ]" the polyurethane by placing it into a cart and moving it around the store as any legitimate shopper would, because he did not "tak[e] or exercise[e] control" over the merchandise in a manner inconsistent with the rights of the owner and Brady's fraudulent return transaction was never completed. D.C.Code § 22–3211(a)(1). He argues that, at most, he could be convicted of attempted theft. The government counters that by simply handling the item with the intent to steal it, appellant committed theft, even without evidence of Brady's fraudulent return for store credit.

We need not decide whether the theft was complete the moment appellant removed the polyurethane from the display shelf with the requisite intent, because it is clear that theft of the polyurethane was complete the moment Brady claimed ownership of it in order to return it to Home Depot for store credit. *See People v. Davis*, 19 Cal.4th 301, 79 Cal.Rptr.2d 295, 965 P.2d 1165, 1175 (Ca.1998) (holding that "a defendant who takes an item from a store display with the intent to claim its ownership and restore it only on condition that the store pays him a 'refund' must be deemed to intend to permanently deprive the store of the item within the meaning of the law of larceny"); *State v. Robertson*, 118 Wash.App. 1017, *2, 2003 WL 21965059 (2003) (noting that "by falsely" claiming ownership of store merchandise, "[appellant] exerted control over the items" "and thus acted in a way that was not authorized by the true rightful owner"). Thus, it is irrelevant that the trial court found that "theft of the gift card was not complete[ ]." *See State v. Martin*, 1996 WL 761215, *4 (Ohio App.1996) ("The criminal act [of stealing four shirts] … did not take place when appellant accepted the refund receipt, but instead occurred when appellant told the sales associate that the shirts" were hers, an act of "verbal concealment and exertion of control").[2]

Because there is sufficient evidence to support the trial court's finding that appellant aided and abetted Brady's fraudulent return, appellant's conviction can be affirmed without relying exclusively on his removal of the merchandise from the display shelf and into an open shopping cart, with the intent to steal it. *See* D.C.Code § 22–1805 ("[A]ll persons … aiding or abetting the principal offender [ ] shall be charged as principals and not as accessories.").

To prove that appellant aided and abetted Brady in the theft of the polyurethane, the government needed to prove beyond a reasonable doubt that: "(a) a crime was committed by someone; (b) [appellant] assisted or participated in its commission[;] and (c) [his] participation was with guilty knowledge." *Bolden v. United States*, 835 A.2d 532, 535 (D.C. 2003). "Proof of presence at the scene of a crime plus conduct which designedly encourages or facilitates a crime will support

---

**2.** The trial court did not find appellant guilty of theft of the how-to book, which it concluded Brady had decided to take at the last minute, nor of theft of the gift card, because the transaction was not completed.

an inference of guilty participation as an aider and abettor." *Garrett v. United States,* 642 A.2d 1312, 1317 (D.C.1994) (quoting *Griggs v. United States,* 611 A.2d 526, 528 (D.C.1992)). Because the offense of theft requires a showing of specific intent, the government must also prove that the aider and abettor himself had the requisite intent. *See Wilson–Bey v. United States,* 903 A.2d 818, 825 (D.C.2006).

The evidence supports that the fact finder reasonably could infer, from viewing the interaction between appellant and Brady in the surveillance video [3] and hearing testimony from Officer Wallace about the oddity of the pair's conduct,[4] that Brady and appellant "[were] in cahoots" in the "plan[ ] to steal the polyurethane and get a gift card in exchange for it." Specifically, the court found that appellant's actions, first, in taking the polyurethane from the shelf, carting it around the store, and then handing-off the cart to Brady near an exit, were designed to help effectuate the fraudulent return, from which the court could infer appellant's specific intent to steal the polyurethane. Although the court "[did not] know whether ... [appellant] aided and abetted Mr. Brady or Mr. Brady aided and abetted [appellant]," the evidence sufficed for the trial court to find that "[t]ogether, they stole it ... and they are both equally guilty." On this record, there is sufficient evidence to convict appellant of theft. *See Tyree v. United States,* 942 A.2d 629, 636 (D.C.2008) (noting that so long as there is a principal, even if unidentified, defendant may be convicted as aider and abettor).

**3.** The judge noted that appellant and Brady exhibited "suspicious" behavior, including: acting "as if they didn't know each other"; splitting up, then getting back together again; "hand[ing]-off the polyurethane so that it wouldn't be so obvious to the store"; and "waiting outside for Mr. Brady while he was engaged in what was admittedly a fraudulent transaction."

## III. Burden of Proof

■■ Appellant also argues that when the trial judge discredited Brady's testimony as incredible because it left questions unanswered, he impermissibly shifted the burden of proof onto appellant "to explain away his actions," "rather than requiring the prosecution to eliminate the plausible theories of innocence" presented by Brady. Citing *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), appellant claims he is entitled to reversal of his conviction. The reasonable doubt standard "plays a vital role in the American scheme of criminal procedure" by giving "concrete substance to the presumption of innocence, to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding." *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (quotations omitted).

■■■ As we have recognized, "[j]udicial review is deferential, giving 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Rivas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). While the finder of fact "is entitled to draw a vast range of reasonable inferences from evidence, [he] may not base a verdict on mere speculation." *Id.* (quoting *United States v. Long,* 284 U.S.App. D.C. 405, 409, 905 F.2d 1572, 1576 (1990)).

**4.** Officer Wallace testified that he believed appellant and Brady were working together because it was "kind of odd that [appellant] [would] walk[ ] into the aisle with the polyurethane and Mr. Brady [would] come out of it with the same product," after "they had a few words with one another."

To prove guilt beyond a reasonable doubt, it is "not necessary for the government to negate every possible inference of innocence." *Wormsley v. United States,* 526 A.2d 1373, 1375 (D.C.1987). However, we will not sustain a conviction that necessarily relies on negative inferences drawn from testimony that is neither implausible, nor inconsistent, even if it is discredited. *See Hector v. United States,* 883 A.2d 129, 134 (D.C.2005) (holding that "[the trial judge]'s disbelief of [defendant]'s testimony could not fill the gap left by the government's total lack of relevant evidence" as to one element of the offense).

Appellant's argument misreads the trial judge's reasoning. First, the trial judge, as fact finder, found that the government had proved the offense beyond a reasonable doubt, based on the evidence presented by Officer Wallace. Then, he explained why Brady's testimony did not create a reasonable doubt in his mind that appellant "did not come to Home Depot on a legitimate shopping expedition," but was "acting together" with Brady to facilitate the fraudulent return "so it wouldn't be so obvious" to Home Depot.[5]

Moreover, appellant's argument goes too far, as it would not only have the government shoulder the burden of proving guilt beyond a reasonable doubt, in order to safeguard the presumption of innocence for the accused, but also limit the fact finder by creating a presumption of credibility for any defense witness's testimony that is not on its face implausible. This is not the law. *See Peery,* 849 A.2d at 1001. In finding that the evidence proved appellant's guilt beyond a reasonable doubt, the trial judge did not rely on negative inferences drawn from Brady's plausible testimony to supply a necessary element of the offense of theft. The burden of proof remained with the government at all times.

For these reasons, the judgment of conviction is

*Affirmed.*

---

5. Appellant takes issue with three observations the trial judge made in explaining why he found Brady's testimony in this regard to be unbelievable: (1) "[Mr. Brady] didn't provide any explanation for why they were walking one behind the other and essentially pretending not to know each other," although the government did not claim they were pretending not to know each other, merely that Brady trailed appellant by "three feet." (2) "I don't think he had an explanation for why [appellant] would have bought the stain for the deck but not the polyurethane. Why didn't he buy both at the same time?" even though Brady was never asked why appellant already had the stain; and (3) "I think he was just trying to protect a friend of his," although the government presented no evidence of a "friendship" or other incentive for Brady to lie. We note that Brady did testify that he had performed other odd jobs for appellant. These credibility determinations were the appropriate function of the fact finder and are beyond the scope of appellate review. *See Powell v. United States,* 246 A.2d 641, 642 (D.C.1968) ("Credibility of witnesses is a question for the trial court and not for this court.").