*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-935

BRENDA D. GRISSOM, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
Criminal Division
(CMD-3737-13)

(Hon. Patricia A. Wynn, Trial Judge)

(Submitted September 23, 2014                    Decided November 12, 2014)

*Susan E. Borecki* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Stephen F. Rickard*, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and PRYOR, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*:  Following a bench trial, appellant

Brenda Grissom was convicted of second-degree theft for stealing two pieces of

jewelry worth a total of $72.00 from a Lord & Taylor department store.[1]  On appeal, appellant argues that there was insufficient evidence to show that she "wrongfully obtained" the jewelry from the store.  Specifically, appellant argues that the only evidence the government proffered to show that she "wrongfully obtained" the jewelry is the universal product codes ("UPCs") on the jewelry, which appeared as items for sale in Lord & Taylor's computer system.  Appellant claims that just because the UPCs appeared in Lord & Taylor's computer system does not mean that the items were unique to that particular store.  Based on the forthcoming reasons, we agree with appellant and conclude that the UPCs in this case, standing alone, could not have reasonably identified the jewelry as coming from this specific Lord & Taylor store.  There being inadequate evidence to reasonably infer that appellant "wrongfully obtained" the jewelry, there is insufficient evidence to support appellant's conviction and we must reverse.

---

[1]  Appellant was charged with a single count of second-degree theft covering two pairs of jeans, valued at $69.50, and two pieces of jewelry, valued at $72.00. At the end of a bench trial, however, appellant was ultimately convicted of second-degree theft with respect to the two pieces of jewelry.

## I.    Factual Background

On March 9, 2013, appellant was shopping at a Lord & Taylor department store located at 5255 Western Avenue, Northwest, Washington, D.C.  A loss prevention officer, Eain James Cole, decided to focus his attention on appellant through a security camera lens as she browsed through the store.  Thereafter, Mr. Cole also physically followed her throughout the store, including within the jewelry section.  However, he did not actually see her conceal or take any items.  Nonetheless, believing that she might have taken some items without purchasing them, Mr. Cole confronted appellant after she exited the store, escorted her to the store's holding area, and searched her belongings.  He discovered jewelry, a bracelet and necklace, among appellant's other personal belongings, which he thought might have come from the store, based on his observation of appellant browsing through the jewelry section.  Mr. Cole recorded the UPCs from the jewelry, cross-referenced those numbers in the store's computer system, and found that jewelry of the same type is sold in the store for a total value of $72.00.  Based on this finding, Mr. Cole concluded that the jewelry items were from that store, and that appellant took them without paying.  Appellant was subsequently charged with second-degree theft.

At trial, the government's only admitted evidence was Mr. Cole's testimony.[2] Mr. Cole testified as to his observations of appellant in the store and clarified that he did not see her take or conceal any items because he was too far away to see what specific items appellant was selecting while browsing at the jewelry display. He further stated that he saw her purchasing several items, but could not see exactly what the items were. Mr. Cole conceded that after he stopped appellant during his investigation, he never checked with the sales clerk or obtained a receipt to potentially identify the items actually purchased. He also never asked whether appellant actually purchased the items in question.

Nevertheless, the government argued that because the UPCs are unique identifiers of merchandise to each individual store, the totality of the circumstances observed by Mr. Cole supported the inference that the jewelry was "wrongfully obtained" from the Lord & Taylor store. Alternatively, the government claimed that, "even assuming the UPC codes were not unique to Lord & Taylor, the fact

---

[2] The trial court was not able to consider other evidence from the government in its final decision for various reasons. Specifically, Mr. Cole's testimony about a discussion with another Lord & Taylor employee who may have watched the events on a security camera was excluded as hearsay. Further, the government did not present that additional employee as a witness at trial. Finally, the actual security video was barred from evidence as a sanction under Super. Ct. Crim. R. 16 for the government's failure to comply with the court's discovery rules.

that scanning them returned Lord & Taylor prices showed that items bearing that UPC code were offered for sale by that store and . . . corroborated that they were the items that appellant selected as she stood at the jewelry counter."

Based on Mr. Cole's testimony, and convinced by the government's argument that the UPCs are unique, the trial court found appellant guilty at the conclusion of a bench trial, reasoning that: "in spite of the fact that there was no direct viewing of [appellant] taking the jewelry, . . . the items did have [UPCs] which, [upon entering them] into the system, returned a price of Lord & Taylor . . . .  I am assuming, and I think it's a reasonable inference, that these [UPCs] are unique."  This appeal followed.

## II.    Discussion

On appeal, appellant argues that the trial court's assumption, that UPCs can identify pieces of merchandise as unique to each store, from which it inferred that the jewelry was wrongfully obtained from that particular Lord & Taylor store, was not supported by the evidence.  This court reviews insufficiency of evidence claims *de novo*.  *Russell v. United States*, 65 A.3d 1172, 1176–77 (D.C. 2013).  In analyzing a sufficiency claim, we view the evidence in the light most favorable to

the government, giving deference to the trial court's findings of fact in weighing the evidence, determining the credibility of witnesses, and drawing reasonable inferences from the testimony. *Price v. United States*, 985 A.2d 434, 436 (D.C. 2009); *Dickerson v. United States*, 650 A.2d 680, 683 (D.C. 1994). Furthermore, in a bench trial, this court will not reverse "unless an appellant has established that the trial court's factual findings are plainly wrong, or without evidence to support them." *Price, supra*, 985 A.2d at 436. Thus, to prevail, appellant must establish "that the government presented 'no evidence' upon which a reasonable mind could find guilt beyond a reasonable doubt." *Russell, supra*, 65 A.3d at 1176 (citations and internal quotations omitted); *Price, supra*, 985 A.2d at 436. However, "slight evidence is not sufficient evidence; a mere modicum cannot rationally support a conviction beyond a reasonable doubt." *Russell, supra*, 65 A.3d at 1176 (citations and internal quotation marks omitted).

To establish second-degree theft, the government must prove that the defendant: (1) "wrongfully obtained the property of [another]," (2) specifically intended — at the time the property was obtained — "either to deprive [another] of a right to the property or a benefit of the property or to take or make use of the property for [themselves] . . . without authority or right," and (3) obtained property that had some value. D.C. Code § 22-3211; *Russell, supra*, 65 A.3d at 1176–77.

The statute defines "wrongfully obtains" as "(1) taking or exercising control over property; (2) making an unauthorized use, disposition, or transfer of an interest in or possession of property; or (3) obtaining property by trick, false pretense, false token, tampering, or deception." D.C. Code § 22-3211 (a); *Price, supra*, 985 A.2d at 436.

Here, the government's sole evidence to establish that the jewelry was wrongfully obtained from Lord & Taylor, i.e., taken from the store without paying for the items, was the testimony of Mr. Cole stating that he recovered the jewelry from appellant bearing UPCs that appeared in Lord & Taylor's computer system upon scanning. Based on that information, the trial court inferred that the UPCs must be unique to this particular Lord & Taylor store and that, consequently, appellant must have wrongfully obtained the jewelry from the store. We take issue with the trial court's conclusions for two reasons.

First, Mr. Cole never testified that UPCs are unique to each particular Lord & Taylor store. Mr. Cole merely assumed that the UPCs were unique after cross-referencing the items found in appellant's bag and discovering that the same type of items were sold at the store. In fact, because we find inadequate evidence at trial to establish that UPCs relating to the jewelry were unique to the specific Lord

& Taylor store, we conclude that the trial court's inference that UPCs could somehow identify specific merchandise is unreasonable.

In coming to this conclusion, we find support from a Fourth Circuit case, which explained that UPCs alone are insufficient to identify the specific store from which the merchandise was obtained. *United States v. Hartgrove*, 919 F.2d 139 (4th Cir. 1990); *see also L'Oreal USA, Inc. v. Trend Beauty Corp.*, 2013 WL 4400532 (S.D.N.Y. Aug. 15, 2013) (explaining that UPCs are not unique and that "all products have a UPC . . . that identifies the *supplier* of a product [rather than the *retailers*, and] nearly all *suppliers* of consumer products put a UPC sticker on the product for inventory control purposes[]") (emphasis added).  Similar to the instant case, in *Hartgrove*, a store security guard observed the defendant as she shopped and browsed through a store.  919 F.2d at 139.  During the guard's surveillance, he saw appellant conceal items and confronted her as she exited the store.  *Id.*  A subsequent scan of the items' UPCs registered in the store's computer system and the defendant was later arrested for theft.  *Id.*  On appeal, the Fourth Circuit held that the computer results merely indicated that the items could have come from *any number of stores*, not necessarily the specific store where the defendant was shopping.  *Id.*  Furthermore, there were no other identifying marks on the items to prove that the items came from that specific store.  *Id.*  In that case,

however, the Fourth Circuit still found the defendant guilty of theft because other corroborating evidence was available to show that the items were wrongfully obtained from the store. *Id.* Notably, the security guard actually saw the defendant take and conceal specific items in the store, those previously concealed items were found in the defendant's personal belongings after a search, and the defendant further admitted her failure to pay for some of the items. *Id.*

Here, just as in *Hartgrove*, a scan of the UPCs returned information to show that the jewelry recovered from appellant was of the same type generally sold at Lord & Taylor. However, UPCs alone are not necessarily unique to a particular retailer or specific retail store. *Hartgrove, supra*, 919 F.2d at 139. Thus, the UPCs alone cannot establish that these specific jewelry items were actually obtained from the Lord & Taylor store where appellant was shopping, nor did Mr. Cole testify to the contrary. Moreover, because Mr. Cole admitted that he only saw appellant *select* jewelry items in the jewelry section and never actually saw appellant *take or conceal* any jewelry, there is nothing to establish beyond a reasonable doubt that these jewelry items were actually stolen.

Second, even assuming that UPCs are somehow capable of identifying the particular retail store from which merchandise is obtained, there would still be

insufficient evidence under these facts to find appellant guilty of theft. The government's sole witness, Mr. Cole, testified that he never saw appellant take or conceal any items, never saw what specific items appellant selected for purchase, never asked whether she actually purchased the jewelry, and never checked with the sales staff for a potential receipt of purchase. The fact that appellant was in possession of items that may have come from Lord & Taylor when she just shopped there is clearly not out of the ordinary or criminal, absent evidence to the contrary. *Hartgrove, supra*, 919 F.2d at 139. The government has the burden to prove second-degree theft beyond a reasonable doubt and failed to do so. Consequently, there was insufficient evidence to sustain appellant's conviction.

### III.   Conclusion

Although we view the evidence in the light most favorable to the government, there must be more than a mere possibility of guilt to convict someone beyond a reasonable doubt. *See Russell, supra*, 65 A.3d at 1176. Here, no reasonable inference can be made from Mr. Cole's testimony or from the items' UPCs to show that appellant wrongfully obtained the jewelry from the store.

*Hartgrove, supra*, 919 F.2d at 139. Accordingly, appellant's conviction is not supported by the evidence and we reverse and remand with instructions to dismiss the criminal information.


*Reversed.*