# District of Columbia
# Court of Appeals

**No. 15-CM-158**

JAYVON WILLIAMS,

Appellant,

v.                                                                CMD-17678-14

UNITED STATES,

Appellee.

FILED

March 23, 2017

DISTRICT OF COLUMBIA
COURT OF APPEALS

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE:  GLICKMAN and BECKWITH, *Associate Judges*, and BELSON, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcripts of record, the briefs filed, and was argued by counsel.  On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that appellant's conviction is reversed and remanded with directions to enter a judgment of acquittal.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated:  March 23, 2017

Opinion by Senior Judge James A. Belson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-158

JAYVON WILLIAMS, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 03/23/2017
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CMD-17678-14)

(Hon. Ann O'Regan Keary, Trial Judge)

(Argued October 20, 2016                    Decided March 23, 2017)

*Anna B. Scanlon* for appellant.

*Vivian E. Kim*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, Assistant United States Attorney, were on the brief, for appellee.

Before GLICKMAN and BECKWITH, *Associate Judges*, and BELSON, *Senior Judge*.

BELSON, *Senior Judge*:  Appellant was charged by information with one count of receiving stolen property,[1] one count of unlawful possession of

_____

[1] D.C. Code §§ 22-3232 (a), -3232 (c)(2) (2001).

ammunition,[2] and one count of failure to obey a lawful order.[3] After a three day bench trial, the court granted appellant's motion for judgment of acquittal as to the unlawful possession of ammunition, found appellant not guilty of failure to obey a lawful order, and found him guilty of misdemeanor receiving stolen property — four identification cards. Appellant filed a timely appeal in which he challenged the sufficiency of the evidence. For the reasons stated below, we reverse the conviction.

**I.**

At 10:30 P.M., a group of men approached Officer Steven Good for assistance at 1133 North Capitol Street, Northeast, and asked to borrow his phone. The men provided Officer Good with their names. At 4:00 A.M. the next day, Officer Good observed a different group of men standing on the west side of First Place, Northwest. Officer Good made eye contact with appellant, who subsequently nudged a backpack in a way that Officer Good characterized as an attempt to push it out of the officer's sight. Officer Good approached the group of men and inquired if they had a moment to talk. In response to the officer's

_____

[2] D.C. Code § 7-2506.01 (3) (2001).

[3] D.C. Municipal Regulation §§ 18-2000.2, -2002.10 (1995).

question, the group took off running. Appellant and another man ran south. Good's partner, Officer Ryan Jensrud, found appellant lying down alongside an air-conditioning unit and clutching a backpack. The officers searched the backpack and found a single bullet, a wallet, jewelry items including watches, and four identification cards. The men pictured on the identification cards matched the faces and names of the men who had approached the officer to use his phone the previous evening. Later, appellant said to the officer, referring to the other man who was with him, "He had nothing to do with it. You can let him go. I did it all on my own."[4]

At trial, Officer Good did not describe the identification cards in detail or state what kind of identification cards he recovered from the backpack. He did not indicate whether the cards were government-issued identification cards, nor did he state whether the cards were expired or currently valid. The only detail provided was that the cards bore names and photographs. The identification cards were not introduced into evidence.

_____
[4] Trial counsel did not raise any objection pursuant to *Miranda* with regard to the admission of this statement.

Officer Good began to testify that the four men who approached asking for his phone said that they had been robbed. The defense immediately interposed an objection, which the court sustained. The trial judge ruled that his statement regarding robbery was hearsay, but that she would allow the officer to testify "that he had an interaction with individuals earlier in the evening."

The court ruled that the government had established beyond a reasonable doubt that appellant was guilty of receiving stolen property — the four identification cards. The court reasoned, "The fact [] that defendant having in his possession multiple I.D.'s of other persons who turn out to be the same individuals who had approached the police officer for assistance earlier in the evening is strong circumstantial evidence supporting a finding that these I.D.'s had been stolen." The court also observed, "I remain unconvinced that the Government is unable to prove a case of [receiving stolen property] without producing the person who's the actual victim of the robbery." Concluding that "all elements of the offense of

receiving stolen property have been proved beyond a reasonable doubt[,]" the court

found appellant guilty of that offense.[5]

_____

[5] The trial judge set out the reasoning that led to the conclusion that the identification cards were stolen and that appellant was aware that they were stolen property:

> Focusing though on the several actions of the defendant which the Court believes establish in their totality circumstantial evidence to allow a finding beyond a reasonable doubt of receiving stolen property, I am focusing on specifically the very first encounter, the very first observation of Officer Good[] of the defendant who upon seeing Officer Good[] taking note of him, they had made eye contact as Officer Good[] is proceeding down the street in the police vehicle driven by Officer Jendru[d], Officer Good[] testified credibly about the defendant's attempt to move the backpack which was on the ground near him out of view by nudging it with his foot.

> Secondly, we have the defendant's action in eloping from the area, fleeing from contact when Officer Good[] asks if he can speak to him.

> Third, we have Officer Good[]'s following after the defendant and the other gentleman in an attempt to contact them and giving commands to them with regard to stopping or getting out of the street and the defendant's action in continuing to flee from the area down 1st Place across L Street and into another area despite the police officers chasing him, and his apparent ignoring the police officers' orders. We have this evidence which obviously reflects some consciousness of

(continued . . .)

guilt, and there is myriad case law indicating that unprovoked flight can be viewed as evidence of consciousness of guilt. We have evidence of the defendant still holding onto the backpack both when he leaves the area initially and when he is found at the end lying on the ground still holding onto the backpack.

And, of course, we have the testimony of the officers to what's found in the backpack and the matching of the I.D. faces to the persons who had approached him earlier. Finally, we have the defendant's own statement, which the Government asserts and I feel that is a fair assertion reflects consciousness of guilt, taking apparent responsibility at the stationhouse when Mr. Gresham appears about to be charged after the backpack items have been discovered and saying to the police officer, there's no need to hold him, it was all me, I did this on my own.

This certainly reflects the defendant's recognition that the items in the backpack were not his own, that the police are about to charge [the other man] with some criminal act related to the backpack. And in terms of the totality of the circumstances, the flight, the initial observation of him attempting to move the backpack out of view, the exact nature of the contents of the backpack, that they were items that were clearly not belonging to the defendant since the personal I.D. cards identified as belonging to three other individuals, two gentlemen named Price and one named Thomas, and the fact of the coincidence just hours earlier of the police officer having been approached by the individuals whose faces are shown on the identification, when coupled with the

## II.

A person may be found guilty of the offense of receiving stolen property if that person (1) "buys, receives, possesses or obtains control" of (2) "stolen property" (3) "knowing or having reason to believe that the property was stolen[,]" and (4) the property has "some value." D.C. Code §§ 22-3232 (a), -3232 (c)(2).

Appellant appeals his conviction arguing that the trial court erred (1) in concluding that the identification cards had "value," and (2) in finding that the cards were stolen. As to both issues, appellant argues that the evidence was insufficient. As we conclude that the government did not adduce sufficient evidence to establish that the cards were stolen, we will not address the issue of their value.

_____
(. . . continued)
> defendant's own statement provide a corroborating inference that the items in the backpack were stolen, and that the defendant would've had reason to believe that they were stolen.

"To sustain a conviction the evidence need be such that reasonable persons could find guilt beyond a reasonable doubt. It is not a requirement that the evidence compel, but only that it is capable of or sufficient to persuade the [fact-finder] to reach a verdict of guilt by the requisite standard." *United States v. Harris*, 435 F.2d 74, 88 n.41 (D.C. Cir. 1970) (internal quotation and citation omitted). However, "a finder of fact is not permitted to cross the bounds of permissible inference and enter into the forbidden territory of conjecture and speculation" in reaching a verdict. *Roy v. United States*, 652 A.2d 1098, 1103 (D.C. 1995) (internal quotation and citation omitted). Thus, the "evidence must support an inference, rather than mere speculation, as to each element of the offense." *Nowlin v. United States*, 782 A.2d 288, 291 (D.C. 2001) (internal quotation and citation omitted).

As pointed out above, two of the elements of the offense of receiving stolen property are that the property in question be stolen, and that the defendant committed the act in question "knowing or having reason to believe that the property was stolen." *See* D.C. Code § 22-3232. Appellant argues that the government failed to adduce evidence sufficient to prove those elements beyond a reasonable doubt. We find appellant's argument persuasive.

A preliminary issue raised by appellant is whether the trial judge improperly considered hearsay in reaching her conclusion. Appellant argues that the judge improperly considered testimony regarding the "robbery" that she had excluded, pointing out that she said, "I remain unconvinced that the Government is unable to prove a case of [receiving stolen property] without producing the person who's the actual victim of the robbery." While this language, taken out of context, may raise the question whether the judge was considering the officer's inadmissible hearsay testimony about the "robbery," it is apparent from the record that the judge was not considering the inadmissible statement itself. Rather, for the reasons the judge explained at length, she *inferred* that there was a "robbery" from the evidence at hand but did not actually "consider" the inadmissible hearsay statement itself: "The fact of the defendant having in his possession multiple I.D.'s of other persons who turn out to be the same individuals who had approached the police officer for assistance earlier in the evening is strong circumstantial evidence supporting a finding that these I.D.'s had been stolen." We do not agree that the judge's inference was based on inadmissible hearsay, and thus, we will review her inference and trial finding under a sufficiency of the evidence standard — whether a reasonable fact-finder could find, beyond a reasonable doubt, that appellant knew or had reason to believe that the cards were stolen based on the subsidiary findings of fact the judge has made.

The evidence before the trial judge on this question was: (1) four men approached Officer Good asking to use his phone and provided him with their names, (2) the names and faces of the individuals who approached the officer matched those on the identification cards eventually found in appellant's backpack, (3) subsequently, appellant, after making eye contact with the officer, started to nudge a backpack, (4) appellant ran when he was approached by the officer, (5) appellant was found lying next to an air-conditioning unit and clutching the backpack, (6) identification cards, jewelry, watches, a wallet, and a bullet were found in the backpack, and (7) after his arrival at the police station, appellant made the statement regarding the other man who had run from the officer, "He had nothing to do with it. You can let him go. I did it all on my own."

Based on those facts alone, we must consider whether "reasonable persons could find guilt beyond a reasonable doubt." *Harris*, 435 F.2d at 88 n.41. Appellant relies heavily on *Robinson v. United States*, 270 A.2d 144 (D.C. 1970). Although *Robinson* was a petit larceny case rather than a receiving stolen property case, it is instructive as to inferring from circumstantial evidence that a crime has been committed. In *Robinson*, the defendant and another man were standing by a counter display of cold remedy capsules in a drugstore. 270 A.2d at 145. They were carrying a large paper bag with the store's name on it. The manager noticed

that the bag had packages of capsules inside it that were of the same brand as those sold at the store and displayed on the counter where they were standing. *Id.* The manager asked the men if they had a sales slip, whereupon the defendant and the other man abruptly left the store. *Id.* Thereafter, the manager noticed that the counter was "substantially depleted" of that particular brand of capsules. *Id.* The manager and a police officer found the defendant and his companion at the grocery store next door, where the defendant tried to block the officer from entering the store while his companion disposed of the bag in a freezer in the store. *Id.* The bag was found to contain two cartons of the capsule packets and nineteen other packets of capsules, bearing the same red crayon price markings as appeared on the packets that were sold in the store. *Id.* However, there was no testimony that the counter was fully stocked before the men were in the store. *Id.* The capsules in the defendant's bag were different in size than those sold on the counter. *Id.* As this court put it: "In short, the prosecution did not establish that there was an unlawful taking." *Id.* at 146.

The government would distinguish *Robinson* on the basis that it was a petit larceny case rather than a receiving stolen property case, and points out that the government in this case does not have to prove that appellant stole the property himself in order to find him guilty of receiving stolen property. The government,

however, fails to distinguish, and also fails to apply, what *Robinson* teaches regarding the reach of circumstantial evidence in a situation somewhat analogous to that presented here. Appellant aptly explains the nature of that failing in the following passage of his reply brief:

> The government also argues that Appellant's reliance on *Robinson* is misplaced because the *Robinson* Court "held that the government did not establish an 'unlawful taking['] because it failed to prove 'by the requisite standard, that the [defendants] were the perpetrators.'" (Government's Brief at 14) (quoting *Robinson v. United States*, 270 A.2d 144 (D.C. 1970)). Quite the opposite, the *Robinson* Court found that the government would have clearly proven that the defendants were the perpetrators had they actually proven an offense was committed.

Appellant's reply brief then quotes the following language from our opinion in *Robinson*:

> The government arguably proved a guilty mind, but did not establish a guilty act. This evidence highly suggests that they were guilty of something. But the legal question, on the motion for judgment of acquittal, is guilty of what. The answer to that question cannot be founded in speculation or from the charge brought by the prosecution. It must be found in proof that a larceny indeed took place. If that proof can be found, short of speculation, then the behavior of appellant and his friend clearly is enough to prove, by the requisite standard, that they were the perpetrators.

270 A.2d at 145-46.

In *Robinson*, this court reversed on the basis that there was "no evidence that the display counter was depleted of its stock by criminal rather than ordinary commercial means." 270 A.2d at 146. This court also observed that "the proof offered at trial circumstantially tends only to establish that appellant and his companion were attempting to avoid the consequences dictated by the reasonable appearance of things." *Id*.

A weakness in the government's case is that the cards were not reported as stolen and thus, the government is relying on an inference that such a theft occurred. If, for example, one or more of the owners of the cards had testified in court that their identification cards had been stolen that evening or had been taken from them in the course of a robbery — then appellant's possession shortly after the item was reported stolen would have been sufficient to establish guilt. *See, e.g.*, *In re D.D.*, 775 A.2d 1096, 1098 (D.C. 2001) (Possession of recently "stolen goods permits the reasonable inference that the person possessing it stole it.") (citing *Head v. United States*, 451 A.2d 615, 624-25 (D.C. 1982)). However, none of the items found in appellant's backpack had been reported stolen. Instead, the

trier of fact was left with a number of facts and circumstances upon which to consider whether to infer or not infer that the cards were stolen. The evidence did not eliminate other scenarios under which the identification cards might have come into appellant's possession, including other scenarios which could have left appellant with a consciousness of guilt.

Appellant argues that the *Robinson* "guilty of what" inquiry is relevant to the case at hand. We agree. While appellant acted suspiciously, it cannot be said that the evidence adequately proves that he knew or had reason to believe the identification cards in the backpack were stolen. Like the defendant in *Robinson*, appellant may be guilty of something, but the question is "guilty of what." *Robinson*, 270 A.2d at 146. We conclude that the fact that four men "approached" Officer Good and "asked for a phone" at 10:30 P.M. at 1133 North Capitol Street, Northeast, combined with the fact that their faces matched the four faces shown on the identification cards found in appellant's backpack at 4:00 A.M. in the 1100 block of First Place, Northwest, and combined further with the acts of appellant that bespoke consciousness of guilt — together are not sufficient to establish guilt.

Ultimately, what was lacking was a reasonable basis for inferring, beyond a reasonable doubt, that there had been a theft of the four identification cards, and that appellant had reason to believe that they were stolen.

Accordingly, we reverse the conviction and remand with directions to enter a judgment of acquittal.

*So ordered.*